Larry C. JONES and Donzell
Parlor, Appellants,

v.

INTERNATIONAL PAPER COMPANY
and United Paperworkers International
Union, AFL–CIO, and its Locals 275, 355
and 380, Appellees.

No. 82–1896.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1983.

Decided Nov. 3, 1983.

John W. Walker, John W. Walker, P.A., Little Rock, Ark., for appellants.

Terry Wynne, Pine Bluff, Ark., Brock B. Gordon, Celia J. Collins, Mobile, Ala., for appellees; Bridges, Young, Matthews, Holmes & Drake, Pine Bluff, Ark., Johnstone, Adams, May, Howard & Hill, Mobile, Ala., of counsel.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Appellants Larry Jones and Donzell Parlor, black employees at International Paper Company's Camden, Arkansas mill, appeal from a judgment of the District Court[1] for the Western District of Arkansas denying them relief in their Title VII employment discrimination claim.[2] Appellants alleged that their employer repeatedly denied them entry into the maintenance department apprenticeship program on the basis of appellants' failure to pass certain tests. Both a disparate treatment and a disparate impact theory were advanced. For reversal appellants argue that the district court erred in (1) failing to conclude that appellants made a prima facie case, (2) failing to find racial discrimination in the employer's maintenance apprenticeship program selection procedures, and (3) adopting verbatim the employer's suggested findings of fact and conclusions of law as the court's own findings. For the reasons discussed below, we affirm the judgment of the district court.

The Camden, Arkansas, paper mill is one of a number of facilities operated by the employer.[3] The mill consists of production departments which process wood into paper and maintenance departments which are responsible for repairing and maintaining the machinery used at the mill. Between the

1. The Honorable Oren Harris, United States Senior District Judge for the Eastern and Western Districts of Arkansas.

2. This suit was originally filed on November 17, 1976, as a class action against International Paper Co. with appellants as the named plaintiffs and class representatives. A consent decree was approved by the court on November 2, 1981. Appellants excluded themselves from class relief in accordance with the terms of the consent decree and proceeded to litigate their individual claims.

3. Employment practices in the Pine Bluff, Arkansas and Mobile, Alabama mills were subject to Title VII suits in *Rogers v. International Paper Co.,* 510 F.2d 1340 (8th Cir.1975), *vacated on other grounds,* 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975), and *Stevenson v. International Paper Co.,* 516 F.2d 103 (5th Cir.1975).

years 1972 and 1978, approximately 15% of the more than 700 mill employees were black.

Jobs in the maintenance departments were generally considered more desirable, offering skilled craft work, better pay and opportunity for advancement. The employer offered a four-year maintenance apprenticeship program designed to develop employees into journeyman-mechanics through both classroom and on-the-job training. All mill employees were eligible to apply for acceptance into this program.

The selection process for new apprentices was a two-step procedure. Applicants were first screened by the personnel department which submitted a list to the maintenance department of those candidates who qualified for consideration. A committee of four or five maintenance supervisors would interview these candidates and make the final selections. This committee has always been all white.

Until 1978, an applicant was required to achieve minimum scores on certain standardized employment tests[4] in order to be considered for a maintenance position. As of 1975, however, the personnel department could grant a waiver of this threshold requirement to black employees who otherwise qualified.

After 1978, applicants' test scores continued to be considered, but minimum scores were no longer formally an absolute prerequisite.[5]

Other criteria for entry into the program included a high school diploma or the equivalent and subjective factors such as character, reliability, ability to learn, and prior work experience and performance.

The maintenance work force of more than 160 employees was all white prior to 1969 when one black employee was accepted into the apprenticeship program. In 1973, one other black employee entered the program. By 1972, the employer had implemented an affirmative action plan with a goal of a 25% black maintenance department. Between 1973 and 1981, of the 30 employees placed in the maintenance apprenticeship program, 12 were black. Thus, at the time of trial, 12 out of approximately 175 maintenance personnel (under 7%) were black.

Larry Jones was hired by the employer in a production job in August of 1972. In 1973, he applied for transfer to the maintenance apprenticeship program but was not considered for acceptance because he did not get the minimum required scores on the standardized tests. His application in 1974 met the same fate. In 1975, although he again did not score above the cut-off level, he was interviewed by the selection committee for a maintenance apprenticeship position. He withdrew as a candidate, however, when he learned that he was only being considered for general mechanics whereas he was interested in electronics and instrumentation. Jones reapplied in 1976 and in 1981; on both occasions he was interviewed but not selected. A work evaluation form on Jones, covering the period October 1972—October 1973, indicated that his performance was less than satisfactory.

Donzell Parlor began working at the Camden mill in 1972 as a production worker. He first applied for a maintenance job in 1975. He was not considered for the apprenticeship program because of his test scores. In 1981 Parlor applied a second time for the program; this time he was interviewed but not selected.

The district court found that appellants failed to prove the tests' discriminatory effect. *Jones v. International Paper Co.,* No. ED–76–58–C(1), slip op. at 10 (W.D.Ark. June 30, 1982). Furthermore, as to appellant Jones, the court found that even had Jones been considered for the apprenticeship program in 1973, "he was not the best qualified of the persons seeking ... ap-

4. The Wonderlic and Bennett tests. These tests were also utilized as selection criteria for all new production department hirees, applying lower cut-off scores. Such use of the tests is not challenged in this case.

5. In January 1978, the employer abandoned the Wonderlic test.

prenticeships in 1973." *Id.* at 4. The court concluded that race played no part in Jones' failure to be selected in 1973, as well as in 1975 and 1981 when low test scores were no longer an absolute bar. *Id.* at 4–5. Similarly, as to appellant Parlor, the court concluded that race was not a factor in his failure to be selected in 1975, 1976 and 1981. *Id.* at 6.

■ Appellant first argues that the district court's verbatim adoption of the employer's proposed findings of fact and conclusions of law was improper. This court has expressed its disapproval of a district court's mechanical adoption of the proposed findings and conclusions of a party in *Askew v. United States,* 680 F.2d 1206 (8th Cir.1982). Important evidence is more likely to be overlooked or inadequately considered when factual findings are not the product of personal analysis and interpretation by the trial judge. *See James v. Stockham Valves & Fittings Co.,* 559 F.2d 310, 314 n. 1 (5th Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). We reiterate our strong disapproval of this practice. Nevertheless, such findings are formally the district court's and we proceed, therefore, to examine the record for support of these findings.

■ As the district court recognized, both the disparate impact and the disparate treatment theories of discrimination can be applied to the particular facts in the present case. Accordingly, we analyze the claims under both theories, keeping in mind the contrasting definitions of the two as given in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Disparate treatment occurs where "[t]he employer simply treats some people less favorably than others because of their race." *Id.* at 335 n. 15, 97 S.Ct. at 1854 n. 15. On the other hand, disparate impact "involve[s] employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Id.*

*Disparate Impact*

■ In order to establish a prima facie case of discrimination under a disparate impact theory, the plaintiff need only show that an employment practice operates to exclude a protected class. *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971) (*Griggs*); *Kirby v. Colony Furniture Co.,* 613 F.2d 696, 703 (8th Cir.1980). The burden then shifts to the employer to show that the practice is justified by a relationship to the employment in question. As stated in *Griggs,* "[t]he touchstone is business necessity. If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited." 401 U.S. at 431, 91 S.Ct. at 853.

■ We are convinced that the district court erred in failing to find that International Paper Co.'s practice of requiring a certain test grade for admission into the maintenance apprenticeship program operated to exclude blacks. Evidence of the tests' discriminatory impact can be found in the testimony of the Camden mill's senior industrial relations representative that he was aware of only two blacks among all new hirees between 1968 and 1972 who achieved high enough scores to be considered for maintenance positions. Furthermore, this court has previously determined the racially disparate impact of the very same testing requirement, utilized at another International Paper Co. plant, in *Rogers v. International Paper Co.,* 510 F.2d 1340, 1348–49 (8th Cir.1975), *vacated on other grounds,* 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975).

The employer offered no evidence to justify the test score requirements on the basis of business necessity. Nevertheless, we must affirm the district court's denial of individual relief to appellants in this case. In order to be entitled to such relief, appellants must establish that they were otherwise fully qualified for acceptance into the apprenticeship program. *Donnell v. General Motors Corp.,* 576 F.2d 1292 (8th Cir.

1978). In *Donnell* we held that a person who was denied entry into the company's apprenticeship program because he lacked a high school diploma, a requirement found to have a discriminatory impact, would only be entitled to individual back pay relief if he proved that he could "satisfactorily pass the further testing, screening, and rating procedures established under . . . [the company's] Apprenticeship Plan." *Id.* at 1301. In *Hameed v. International Ass'n of Bridge, Structural & Ornamental Iron Workers,* 637 F.2d 506, 520 n. 17 (8th Cir.1980), we explained that such proof will only be required where the other criteria are not themselves invalid.

■ In the present case, the district court found that Jones' work performance prior to 1973 had been "less than exemplary" and thus even had he been considered in that year, he would not have been selected based on other valid selection criteria. The court also rejected Parlor's contention that he would have been selected but for the testing component of the selection procedure. We cannot say that these findings of fact are clearly erroneous.

*Disparate Treatment*

■ In order to establish a prima facie disparate treatment case, a plaintiff must prove that he or she applied for an available position for which he or she was qualified, but was rejected "under circumstances which give rise to an inference of unlawful discrimination." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1980). Establishment of a Title VII prima facie case creates a legally mandatory, rebuttable presumption of discrimination. *Id.* at 254 n. 7, 101 S.Ct. at 1094 n. 7. The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. The defendant's evidentiary obligation is limited to a burden of production. As a final step, assuming a valid rebuttal, the plaintiff· is entitled to prove that defendant's reasons were merely a pretext. The ultimate burden of persuasion remains throughout with the plaintiff who must convince the trier of fact by a preponderance of the evidence that the defendant intentionally discriminated against the plaintiff. *Id.* at 253–54, 101 S.Ct. at 1093–94. *Kirby v. Colony Furniture Co.,* 613 F.2d at 702–03. Furthermore, a court of appeals may only reverse a district court's finding on discriminatory intent if it concludes that the finding is "clearly erroneous" under Fed.R.Civ.P. 52(a). *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

■ In the case before us both sides were given a full opportunity to present their evidence. Therefore, it is unnecessary and not helpful to address the question on appeal in terms of whether the district court erred in failing to find that appellants made a prima facie case. *United States Postal Board of Governors v. Aikens,* —— U.S. ——, ——, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). The employer articulated nondiscriminatory reasons for its decisions not to accept Jones or Parlor in the apprenticeship program and introduced evidence that Jones had a poor work record at the mill prior to his 1973 rejection and that successful applicants had more experience and training than either Jones or Parlor.

Based on the record we cannot say that the district court's conclusions that race was not a factor in either Jones' or Parlor's failure to be selected for a maintenance position or that the employer's nondiscriminatory reasons were not pretextual were clearly erroneous. *See Ward v. Arkansas State Police,* 714 F.2d 62 (8th Cir.1983).

Judgment affirmed.