Charles HOWE; Robert Wells; Ralph W. Thompson; Charlotte Chiles; Patrick Mousel, On behalf of themselves and as representatives of a Class of Persons Similarly Situated, Appellees,

v.

VARITY CORPORATION and Massey–Ferguson, Inc., Appellants.

No. 89–2319.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1989.

Decided Feb. 15, 1990.

Thomas J. Kavaler, New York City, for appellants.

Vance K. Opperman, Minneapolis, Minn., for appellees.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

LAY, Chief Judge.

Varity Corporation (Varity) and Massey-Ferguson, Inc. (M-F Inc.) appeal from a preliminary injunction issued by the district court requiring them to reinstate portions of a terminated employee welfare benefit plan. We reverse in part and affirm in part.

## BACKGROUND

M-F Inc., which makes farm equipment, is wholly owned by Varity. M-F Inc. maintains a comprehensive health and welfare benefit plan for its employees and retirees. Section 7.4 of the "Master Plan" contains the following language:

> The Company hereby reserves the right, by action of the Board, to amend or terminate the Plan or Trust at any time, provided no such amendment or termination shall have the effect of diverting the Trust funds to purposes other than the exclusive benefit of the Employees except as provided in Section 7.1. However, the right to amend or terminate the Plan shall not, in any way, affect an Employee's right to claim benefits, diminish, or elimi-

nate any claims for benefits under the provisions of the Plan to which the Employee shall have become entitled prior to the exercise of the Company's right, through its Board, to terminate or amend.

In the late 1970's M-F Inc. began having financial difficulties which continued through 1986. On May 9, 1986, Varity transferred a portion of M-F Inc.'s operations to a newly-created Canadian corporation, Massey Combines Corporation (MCC). As part of this restructuring, known as "Project Sunshine," approximately 1500 employees of M-F Inc. and other Varity subsidiaries were transferred to MCC. In addition, MCC assumed the obligations of M-F Inc. and other Varity subsidiaries to provide welfare benefits to 3500–4000 retirees. Because MCC adopted M-F Inc.'s welfare plan verbatim, however, this restructuring did not immediately affect the welfare benefits of M-F Inc. employees and retirees.

MCC's financial condition quickly slid downhill. On March 4, 1988, MCC went into receivership in Canada and terminated all of its employees. MCC's receiver sent notice to all former employees, retirees, and other plan beneficiaries indicating there were no funds available to continue welfare benefits. All welfare benefits immediately ceased.

This suit was brought pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461 (1982), by representatives of former salaried employees, retirees, disabled employees, and eligible dependents of retirees and disabled employees of M-F Inc. who were transferred to MCC in 1986 through the Project Sunshine restructuring. Plaintiffs sought an order requiring Varity and M-F Inc. to restore benefits to retirees, disabled employees, and their survivors and eligible dependents.[1] The district court granted plaintiffs' motion for a preliminary injunction, finding that the welfare benefit plan entitled retirees to continued benefits

---

1. The court conditionally certified the class "for the narrow purpose of effectuating the preliminary injunction." In view of our reversal on the issuance of the preliminary injunction as to the conditional class as a whole, we need not pass

throughout their lifetimes.[2] This interlocutory appeal followed.

## DISCUSSION

### A. Benefits of Retirees

■ The district court based its order of preliminary relief on the ground that welfare benefits vested upon retirement and could not thereafter be terminated by MCC or defendants. Since we deal here only with welfare benefits (medical, dental, disability, and life insurance), ERISA's mandatory vesting requirements relating to pension rights do not apply. 29 U.S.C. § 1051(1) (1982). The issue we confront is "simply one of contract interpretation." *Anderson v. Alpha Portland Indus., Inc.,* 836 F.2d 1512, 1516 (8th Cir.1988) (quoting *Local Union No. 150–A v. Dubuque Packing Co.,* 756 F.2d 66, 70 (8th Cir.1985)). Welfare benefit plans may be modified or terminated absent the employer's contractual agreement to the contrary. *Anderson,* 836 F.2d at 1516–17.

Plaintiffs argue that the contractual language contained in the plan documents constitutes a promise that welfare benefits vest for life upon an employee's retirement. The district court held that Section 7.4, which secures an employee's right to claim benefits to which the employee "shall have become entitled" prior to termination of the plan, constitutes explicit vesting language. In addition, the court found that past company practice and summary plan documents stating that welfare benefits "continue in retirement" establish retirement as a vesting point.

■ The district court's ruling is based on an erroneous view of the law.[3] Plaintiffs have the burden of proving vested welfare benefits. *Anderson,* 836 F.2d at 1517. In *Anderson* we held that this burden was not met by the employer's promise to provide welfare benefits "until death of retiree" where the employer had expressly reserved the right to terminate or amend the plan. *Id.* at 1518. Similarly, in *DeGeare v. Alpha Portland Indus., Inc.,* 837 F.2d 812 (8th Cir.1988), *vacated and remanded,* — U.S. ——, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1989) we held that an employer's promise to future retirees that benefits "will continue" could not be read as a promise of vested lifetime benefits in the face of a termination clause. *Id.* at 814, 816–17.[4]

---

on the propriety of the conditional certification. See part B of our discussion.

**2.** The district court's analysis is contained in a 51–page Memorandum and Order adopted verbatim from a memorandum submitted by plaintiffs in support of their motion. Despite our disapproval of this judicial practice, *see Jones v. International Paper Co.,* 720 F.2d 496, 499 (8th Cir.1983), these findings and conclusions are nevertheless formally those of the district court, and we must examine the record for support of these findings and conclusions. *Id.*

**3.** We recognize that a preliminary injunction is ordinarily reviewed under an abuse of discretion standard. *Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 114 & n. 8 (8th Cir.1981) (en banc). However, an appellate court reviewing the grant or denial of a preliminary injunction may also determine whether the district court based its decision on an erroneous legal premise. *Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.,* 815 F.2d 500, 503 (8th Cir.1987); *O'Connor v. Peru State College,* 728 F.2d 1001, 1002 (8th Cir.1984). We therefore may reach the legal issues at the heart of the case. *See Calvin Klein,* 815 F.2d at 504 (appellate court may review legal conclusions where it is plain

that lower court's ruling is "inextricably bound up in its view of the law").

**4.** The Supreme Court's remand of *DeGeare* was based on its decision in *Firestone Tire & Rubber Co. v. Bruch,* — U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *DeGeare,* we held as an initial matter that a plan fiduciary's interpretation of plan terms was entitled to deference on review. *DeGeare,* 837 F.2d at 814–15. We went on to hold, however, that *"[i]n any event, * * * the administrator and district court correctly construed the plan documents * * *." Id.* at 815. We then applied the contract interpretation principles established in our prior cases. *Id.* at 815–16.

*Bruch*'s holding that the plan fiduciary is entitled to deference in construing terms only when the plan expressly reserves the right to do so did not affect the principles underlying the central part of our decision in *DeGeare. See Bruch,* — U.S. at ——, 109 S.Ct. at 956; *see also Lakey v. Remington Arms Co.,* 874 F.2d 541, 543–44 (8th Cir.1989) (explaining the effect of *Bruch* ). Thus, we disagree with the district court's conclusion that the remand of *DeGeare* leaves this circuit's law "up in the air." The basic contract interpretation principles of *DeGeare* and *Anderson* still apply.

After a careful review of the plan documents, we find nothing that allows plaintiffs to escape these holdings. Section 7.4 of the plan does not itself pinpoint retirement as a vesting trigger. Section 7.4 merely protects an employee's right to claim benefits for an injury or disabling event that occurs prior to termination of the plan.[5]

■ As *Anderson* and *DeGeare* make clear, the mere fact that employee welfare benefits continue in retirement does not indicate that the benefits become vested for life at the moment of retirement. No inference of an intent to vest can be presumed from the fact the benefits are retirement benefits. *DeGeare*, 837 F.2d at 815; *Anderson*, 836 F.2d at 1516–17. Indeed, the benefits at issue here are "retirement benefits" in a technical sense only. Unlike pension benefits, coverage under the welfare benefit plan does not begin at an employee's retirement. Rather, as plaintiffs themselves strenuously argue, the welfare benefits simply continue when an employee retires. Nothing in the documents establishes retirement as a vesting point.

■ The district court's reliance on extrinsic evidence is also misplaced. The court found that in the past defendants had exempted retirees from plan changes, thereby implying that retirees' benefits were "untouchable." As a general rule, however, extrinsic evidence may not be relied upon where the documents are unambiguous on their face. *See, e.g., Anderson*, 836 F.2d at 1517 ("[I]f the contract is deemed ambiguous, *then* the court may weigh extrinsic evidence to aid in its construction.") (quoting *Dubuque Packing*, 756 F.2d at 69) (emphasis added). Moreover, it is the extrinsic evidence itself, in our view, that is ambiguous. Merely because defendants chose to exempt retirees

from plan changes in the past does not mean that defendants considered themselves forever bound to do so. Plaintiffs have not argued estoppel, nor have they suggested any detrimental reliance on defendants' practices. This evidence therefore does not aid plaintiffs in meeting their burden of proof.

We hold that the district court erred in granting the preliminary injunction on the ground that the welfare plan could not be terminated as to retirees.

**B. Propriety of Preliminary Injunction as to Subclasses**

The district court's injunction reinstates all retirement and disability benefits as they existed immediately prior to March 4, 1988, the date MCC went into receivership. As our holding above makes clear, retirees as a general class are no longer entitled to these benefits. Varity and M–F Inc. concede, however, that Section 7.4 establishes an "entitlement" in favor of beneficiaries who became injured or disabled prior to plan termination.[6] Therefore, MCC was not at liberty to terminate payments to these persons. However, MCC is presumably without funds to pay these benefits and is not a party to this lawsuit. Thus, beneficiaries with vested rights are left to look solely to Varity and M–F Inc. for satisfaction of their claims.

■ This observation requires us to consider two subclasses of beneficiaries. The first subclass consists of persons who became injured or disabled (and thereby vested) prior to May 9, 1986, the date they were transferred to MCC. We disagree with defendants' argument that these beneficiaries must look solely to MCC for recovery. M–F Inc.'s contractual obligations to provide health and disability benefits to this group had fully ripened prior to the

---

5. For example, if a covered employee were to break a bone one day before the plan is terminated, that employee would be "entitled" to medical expense reimbursement for the injury.

6. Defendants concede Section 7.4 is a "pipeline" provision which protects employees and retirees against termination of benefits once they suffer an injury or illness. The plan language indi-

cates that disabled persons fall within this group and are thus entitled to continued disability benefits if their disability occurred prior to the plan termination date. The plan makes clear that these disability benefits may be terminated only upon the employee's death, attainment of age 65, or end of disability, whichever comes first.

1986 transfer and could not be discharged by a transfer of the obligations to MCC. It is fundamental that an assignment will not discharge the assignor's debt to a third party without the third party's consent. *E.g.,* 4 A. Corbin, *Corbin on Contracts* § 866 (1951). The record is not clear, but assuming there are members of the conditional class who became entitled to welfare benefits by reason of injury or disability before May 9, 1986, then the preliminary injunction shall continue as to these persons.

■ The second subclass consists of persons whose benefits became vested by reason of an injury or disability occurring *after* the 1986 transfer but *before* MCC went into receivership on March 4, 1988. Defendants appear to suggest that the transfer of these persons to MCC relieved both Varity and M–F Inc. of all continuing benefits obligations. The district court disagreed, finding defendants liable for these obligations under three alternative theories: (1) as "alter egos" of MCC; (2) as "employers" under ERISA, *see* 29 U.S.C. § 1002(5) (1982), or; (3) as plan fiduciaries, *see id.* §§ 1002(21)(A), 1109. We are convinced that resolution of these issues depends on a more fully developed record and more carefully-considered factual findings than those before us. We do not accept the district court's adoption of plaintiffs' proposed findings as a final determination of the factual issues involved under these theories. Such "mechanically adopted" findings "do not reveal the discerning line for decision" on the factual issues establishing defendants' liability. *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 657, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12 (1964).

Nevertheless, we find reasonable probability that the members of this subclass may be able to prove defendants liable under one or more of these theories. At the present time, we are satisfied that the district court did not abuse its equitable powers in granting this aspect of the preliminary injunction on the proposed findings it adopted. However, the district court must now independently determine whether the record supports defendants' liability as to those persons who became entitled to benefits between May 9, 1986, and March 4, 1988.

Although the record is not completely clear on the issue, it appears that the named plaintiffs in this case do not fall within the two subclasses we have discussed.[7] However, the record does disclose the existence of some unnamed members of the conditional class who may fall within these groups.[8] Class representatives must have a personal stake in the outcome of the case at the time the district court rules on class certification in order to prevent mootness of the action. *E.g., Inmates of Lincoln Intake & Detention Facility v. Boosalis*, 705 F.2d 1021, 1023 (8th Cir.1983). In addition, plaintiffs purporting to represent a class must satisfy the requirements of Federal Rule of Civil Procedure 23. Because the named plaintiffs in this case sought relief on their claim that welfare benefits were vested as to all retirees, the district court conditionally certified a broad class for purposes of preliminary relief. In light of our ruling today, the class conditionally certified by the district court is too broad and cannot serve as the class for purposes of final judgment. The district court must now reevaluate the case under Rule 23 and redefine the class in accordance with this opinion. This may require substitution of suitable class representatives. *Cf. Kremens v. Bartley*, 431 U.S. 119, 134–35, 97 S.Ct. 1709, 1717–18, 52 L.Ed.2d 184 (1977) (remanding for reconsideration of class definition and substitution of class representatives where named plaintiffs' claims have become moot).

7. Affidavits in the record indicate plaintiffs Howe, Thompson, Chiles, and Mousel did not suffer disability or uncompensated injury prior to March 4, 1988. The record before us is devoid of information concerning the remaining named plaintiff, Robert Wells.

8. Affidavits in the record indicate that Harold Lynam suffered a disabling heart attack while working for M–F Inc. in April, 1986; that Roy Mahon had his leg amputated and suffered aneurysms in January, 1988.

**1112**

## CONCLUSION

We reverse the grant of the preliminary injunction as to the general class of persons conditionally certified by the district court. We affirm the district court's issuance of the preliminary injunction as to plan beneficiaries who are members of the class conditionally certified by the district court and who became disabled or otherwise entitled to benefit payments prior to the March 4, 1988.