771 F.Supp. 992 (1991)
UNITED PAPERWORKERS INTERNATIONAL UNION, AFL-CIO, CLC, et al., Plaintiffs,
v.
JEFFERSON SMURFIT CORPORATION, Container Corporation of America and Smurfit Pension and Insurance Services Company, Defendants.
No. 89-1849C(6).
United States District Court, E.D. Missouri, E.D.
September 6, 1991.
*993 Robert Mitchell, David M. Cook, Kircher & Phalen, Cincinnati, Ohio, James I. Singer, Schuchat, Cook & Werner, St. Louis, Mo., for plaintiffs.
Michael L. Mulhern, Deborah Gage Haude, Columbus R. Gangemi, Winston & Strawn, Chicago, Ill., Glenn E. Davis, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, Mo., for defendants.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on defendants' motion for summary judgment filed herein on May 31, 1991.
Plaintiffs United Paperworkers International Union, AFL-CIO, CLC (United Paperworkers), Graphic Communications International Union, AFL-CIO (Graphics Communications), International Union of Operating Engineers, AFL-CIO, Local 20 (Local 20), and International Union of Operating Engineers, AFL-CIO, Local 835 (Local 835) are labor organizations (sometimes collectively referred to as Unions) representing *994 employees within collective bargaining units at various facilities throughout the United States owned and operated by defendants Jefferson Smurfit Corporation (Jefferson Smurfit) and Container Corporation of America (Container Corporation). Plaintiffs Ranzie H. Rigsby, Otto K. Stewart, Laurence Pentecost, and Emerson Adkins, individually and as the representatives of the certified class of approximately three thousand five hundred participants in a retiree health insurance program,[1] and Union plaintiffs brought this suit against defendants Jefferson Smurfit Corporation, Container Corporation of America and Smurfit Pension and Insurance Services Company (SPISC).[2]
Plaintiffs challenge defendants' unilateral increase of Container Corporation retirees' group medical insurance premium contributions and unilateral reduction of the maximum lifetime medical insurance benefits from $500,000.00 to $100,000.00 for each participant and their dependents effective January 1, 1987, alleging that such unilateral changes in Container Corporation retirees' medical insurance premium contributions rates and maximum lifetime medical insurance coverage constituted a breach of the collective bargaining agreements in violation of § 301 of the National Labor Relations Act, 29 U.S.C. § 185. Plaintiffs further challenge the representations made to Container Corporation retirees as being fraudulent representations and defendants' actions of increasing premiums and reducing the lifetime maximum of retirees in 1987 as constituting a breach of fiduciary duties in violation of § 404 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1104 and § 502 of ERISA, 29 U.S.C. § 1132 as a result of defendants' alleged failure to provide benefits in accordance with the terms of the welfare benefit plan. Plaintiffs seek a court order compelling defendants to reinstate the medical insurance as provided in the Group Insurance Program Agreements in effect at the time of each individual plaintiff's retirement so that plaintiffs will be awarded lifetime vested retiree health insurance at guaranteed premium levels.
The undisputed facts are as follows. In 1964 Container Corporation first made available to future salaried and hourly retirees the Container Corporation of America Group Insurance Plan for Retired Employees (1964 Plan) in 1964. The letter addressed to eligible retirees contained within the Plan booklet distributed to eligible retirees explained that "[t]hese benefits will be provided to eligible retired employees without cost to them." Under the schedule of retired monthly contribution in the 1964 Plan booklet, the premium monthly payment for dependent(s) coverage was $6.83. Notably, the 1964 Plan contained no reservation of rights provision stating that benefits could be canceled, modified or amended.
Except for the dropping of over sixty-five employees from coverage upon the advent of Medicare, the 1964 Plan continued without major modifications as the only *995 retiree health policy provided by Container Corporation. In 1976, the Plan was changed significantly for all future salaried and hourly retirees and for any current retirees who wished to change from the 1964 Plan. Unlike the 1964 Plan, the new plan was not limited to a fixed, flat dollar schedule of benefits, and retirees who elected to participate in the new plan were required to pay for a portion of the cost of the program.
The 1976 Plan, the Container Corporation of America Retired Employee Medical Benefits Plan, was set forth in a formal written document as required by ERISA, 29 U.S.C. § 1102(a)(1), and a summary of the terms of the plan, a Summary Plan Description (SPD), was prepared in accordance with the strictures of ERISA. 29 U.S.C. § 1022. All eligible retirees, both salaried and hourly, union and non-union, received a copy of the SPD. The 1976 Plan did not explicitly specify that any set monthly premium would be a term of the Plan, but the 1976 Plan descriptive booklet or the SPD specifically provided that retirees would make contributions as required by the Plan without outlining any particular dollar amounts for the premiums and noted the source of contributions as being made by the employer and the employee. The SPD further provided in relevant part that the insurance under "this Plan will terminate when this Plan is discontinued." The SPD also expressly provided in the subsection titled Plan Termination of the Additional Information section that the plan administrators reserved the right to "terminate, suspend, withdraw, amend or modify the Plan in whole or part at any time, subject to any applicable provisions of the group insurance policy(ies)." 1976 SPD, at 24.
In a letter announcing the new plan to all eligible retirees together with the Highlights of the New Health Insurance Plan for Retired Container Employees and Their Dependents attached, Container Corporation informed the participants and eligible retirees that their costs would be $8.00 a month for persons with Medicare and $20.00 a month for persons not eligible for Medicare. The letter also informed the eligible retirees that these costs could increase at a future date but in fact the contribution rates remained unchanged until December 31, 1986. The Highlights memorandum further advised the following:
There is every expectation that your contribution and the Company's contribution will be adequate to cover the long term cost of the Plan. However, contributions are based on the Plan's expected costs and may change in the future. In the event the cost does increase at some future date, you will of course, have the choice of continuing in the Plan at the new cost or canceling your coverage. However, you may in any event, terminate coverage at any time but evidence of insurability will be required in order to reenter the plan.
October 6, 1975 Highlights, at 4. The Highlights memorandum further noted that the Plan was on a contributory basis with the company and the retiree each paying a portion of the cost. The enclosed enrollment card to be executed by the eligible retiree did not provide for any vested or set premium. By signing the enrollment card, the participant elected to be insured in accordance with the 1976 Plan and authorized the required contributions to be deducted from his/her pension check.
Following the implementation of the 1976 Plan, Container Corporation modified the benefits under the Plan, such as increasing the lifetime maximum benefit for retiree coverage and reducing deductibles. Each of the subsequent SPD booklets issued contained the same express reservation of rights to terminate and amend as well as revised Highlights outlining the new maximums and deductibles and containing the cautionary language that premiums could increase in the future at the time of such changes.
Jefferson Smurfit purchased the stock of Container Corporation in late 1986 and thereafter Jefferson Smurfit and Container Corporation consolidated their employee benefit programs. Effective January 1, 1987, Jefferson Smurfit/Container Corporation announced that all Jefferson Smurfit and Container Corporation active and retiree *996 health care coverage would be placed under Aetna Life and Casualty Company (Aetna) and that certain changes would be made such as the retirees having to pay a considerably greater share of the cost of their medical insurance and the maximum lifetime benefits available under the Plan being reduced. Specifically, under-65 hourly retirees would be charged a monthly premium of $48.94, under-65 dependents' premiums would be charged $88.15, and over-65 retirees and dependents each would be charged a monthly premium of $54.81. SPISC informed the retired hourly employees that these amounts represented one-half of the total premium cost. The 1987 Plan, like the 1976 Plan, did not establish a fixed premium or set a fixed percentage of costs to be paid by Jefferson Smurfit/Container Corporation. The 1987 Plan once again expressly reserved Jefferson Smurfit/Container Corporation's right to modify, terminate or change the Plan in whole or in part at any time.
Upon the issuance of the new terms and premiums, the hourly retirees of Container Corporation filed this class action suit.
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to summary judgment as a matter of law." Fed. R.Civ.P. 56(c); First Security Savings v. Kansas Bankers Surety Co., 849 F.2d 345, 349 (8th Cir.1988). In passing on a motion for summary judgment, a court is required to view the facts and inferences that reasonably may be derived therefrom in the light most favorable to the non-moving party. Holloway v. Lockhart, 813 F.2d 874, 876 (8th Cir.1987). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 392 (8th Cir.1986). As the Supreme Court has stated:
The inquiry performed is the threshold inquiry of determining whether there is the need for a trial  whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
Under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Moreover, the inquiry is not whether there is literally no evidence to support the non-moving party's position, but rather whether "there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251, 106 S.Ct. at 2511 (citations omitted). In this regard, the burden of proof is the same for the judge as for the jury: "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512. Rule 56(c) mandates the entry of summary judgment against a party who fails to produce any proof to establish an element essential to the party's case and upon which it bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
At the outset, the Court notes that the "affidavit" of William Bennett and Exhibit No. 3 to the affidavit of Harold Fendius in support of defendants' motion for summary judgment are not appropriate evidence for the Court to consider. Bennett's affidavit is his deposition taken in the Alday litigation where plaintiffs were not parties, and the affidavit does not contain a sworn statement from Bennett adopting his testimony from the previous litigation to this case. Moreover, defendants' failure to explain the origin of Exhibit No. 3 attached to the affidavit of Fendius and to submit the document in its entirety compels this Court to strike this exhibit in support of defendants' motion for *997 summary judgment. Accordingly, the Court will grant plaintiffs' motion to strike the "affidavit" of William Bennett and Exhibit No. 3 to the affidavit of Harold F. Fendius.
The Court will first consider plaintiffs' claim that defendants' unilateral increase of the retirees' group medical insurance premium contributions and reduction of the maximum lifetime medical insurance benefits constituted a breach of the collective bargaining agreements in violation of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiffs contend that the collective bargaining agreements provide for lifetime vested benefits and guaranteed premium rates as established by the date of the retirees' retirement for their lifetime.
Defendants move for summary judgment contending that plaintiffs' claim to lifetime vested benefits and guaranteed premium rates contradicts every document by which the Plan was established and maintained and, in fact, the documentary record of the Plan establishes that Container Corporation anticipated the possibility of rising premiums when the Plan was introduced and expressly advised enrolling retirees of this possibility. Defendants assert that, instead, the SPD, the statutorily established means of apprising the participants of the terms of the plan and its benefits such as any set premium, specifically informed retirees that the Plan could be modified or even terminated.
A retiree health insurance plan, such as the one provided by Container Corporation in this case, is a welfare benefit plan under 29 U.S.C. § 1002(1) and not a pension plan under 29 U.S.C. § 1002(2). Only pension plans, not welfare benefit plans, are subject to ERISA's vesting, participation and minimum funding requirements. 29 U.S.C. §§ 1051-1061 and §§ 1081-1086; Anderson v. Alpha Portland Indus., Inc., 836 F.2d 1512, 1516 (8th Cir.1988), cert. denied sub nom., 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989). Consequently, plaintiffs are precluded from arguing that regardless of the Plan's language, they had vested rights to defendants' health insurance plan under ERISA. See id.; Moore v. Metropolitan Life Ins. Co., 856 F.2d 488 (2d Cir.1988).[3] ERISA requires that welfare benefit plans be governed by written plan documents which are to be prepared and filed in compliance with ERISA's reporting and disclosure requirements. 29 U.S.C. § 1102(a)(1). Informal written amendments of ERISA plans are expressly prohibited under 29 U.S.C. § 1102(b)(3).
As a result of welfare benefits not automatically vesting as a matter of law, the Court must determine whether "the parties intended [that hourly] retirees' benefits would be vested and not tied to the agreement which created them." Anderson v. Alpha Portland Indus., Inc., 836 F.2d at 1516 (quoting Local Union No. 150-A, United Food & Commercial Workers Int'l Union v. Dubuque Packing Co., 756 F.2d 66, 70 (8th Cir.1985)). The exemption of welfare benefits plans from ERISA's vesting requirements allows the parties to determine the duration of the welfare benefits, and consequently, the issue is one of contract interpretation. Id.; Howe v. Varity Corp., 896 F.2d 1107, 1109 (8th Cir.1990). Welfare benefit plans may be terminated or modified absent the employer's contractual agreement providing otherwise. Howe v. Varity Corp., 896 F.2d at 1109. An employer is not prohibited by the exemption from ERISA's vesting requirements from extending benefits beyond the expiration of the collective bargaining *998 agreement if the parties so intended. Local Union No. 150-A, United Food & Commercial Workers Int'l Union v. Dubuque Packing Co., 756 F.2d at 69-70. In such a case, plaintiff bears the burden of showing that the parties intended retirees' benefits would be vested and not tied to the agreement which created the welfare benefits. Id.
Plaintiffs assert that defendants' arguments ignore written contractual provisions in several contracts and express oral agreements, subsequently incorporated in written contracts, concerning the implementation and continuation of retirees' health insurance at specific premium and benefit levels. Plaintiffs further argue that defendants' contention that the parties' entire agreement on retirees' health insurance must be expressly detailed in writing in order for the agreement to be binding is without merit.
The Court notes that although collective bargaining agreements need not be written to be enforceable, an agreement providing benefits vesting upon retirement "must be a specific, if not written, expression of the employer's intent to be bound." NLRB v. Ralph Printing & Lithographing Co., 433 F.2d 1058, 1061 (8th Cir.1970), cert. denied, 401 U.S. 925, 91 S.Ct. 883, 27 L.Ed.2d 829 (1971); Anderson v. John Morrell & Co., 830 F.2d 872, 877 (8th Cir. 1987). The Court finds that such an expression is lacking in the executed collective bargaining agreements in this case, and consequently, plaintiffs have failed to overcome their burden of proving that they were promised such vested lifetime benefits and specific premiums. Anderson v. Alpha Portland Indus., Inc., 836 F.2d at 1516-17; DeGeare v. Alpha Portland Indus., Inc., 837 F.2d 812, 815 (8th Cir.1988), vacated and remanded, 489 U.S. 1049, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1989) (the Eighth Circuit held that an employer's promise to future retirees that benefits "will continue" could not be read as a promise of vested lifetime benefits in the face of a termination clause).[4]
As a general rule, the Court may not rely on extrinsic evidence where the documents are unambiguous on their face. Howe v. Varity Corp., 896 F.2d at 1110. The Court finds that the retiree medical benefits plan terms in this case are unambiguous on their face and that there is no provision providing for vested lifetime health insurance benefits at a guaranteed premium level. To the contrary, Container Corporation expressly reserved the right to terminate, amend or modify the terms of the Plan in the unambiguous SPDs issued to the retirees. Moreover, the SPDs in this case made no reference to any collective bargaining agreements by which any rights or benefits were established or maintained as required under ERISA. 29 U.S.C. § 1022(b). The accompanying Highlights memorandum clearly outlined the possibility of premium increases. No basis can be found in the language of the plan documents to contradict Container Corporation's reservation of the right to terminate, amend or modify the Plan at any time or to suggest vested lifetime benefits or specific premiums.
Plaintiffs further allege that the representations made to Container Corporation retirees concerning the cost of the increased premium contributions as constituting fifty per cent of defendants' cost of providing medical insurance to the retirees were fraudulent misrepresentations. Plaintiffs contend that defendants' actions constituted an unlawful failure to provide benefits in accordance with the terms of the employee welfare benefit plan as required by ERISA, 29 U.S.C. § 1132, and a breach of fiduciary duties in violation of ERISA, 29 U.S.C. § 1104.
Defendants move for summary judgment by contending that the 1987 changes did not constitute a breach of fiduciary duty and that the December 29, 1986 announcement *999 to retirees of the 1987 changes including the statement of the cost equalling one half of the premium for the Container Corporation hourly retirees was not a fraudulent misrepresentation.
An employer acts as a fiduciary when administering a welfare plan in accordance with the terms, but not when deciding how and under what terms the employer should provide benefits in a plan. Musto v. American General Corp., 861 F.2d 897, 911 (6th Cir.1988), cert. denied, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). If the employer is acting in his capacity as a settlor of the plan, his conduct as to business decisions in implementing the plan are not regulated by the fiduciary duties outlined in the ERISA statute. Id. Consequently, an employer's decision to provide a less favorable plan of benefits and related decisions regarding plan design fall into the category of settlor acts and are not subject to review under the fiduciary standards of ERISA. Hickman v. Tosco Corp., 840 F.2d 564, 566 (8th Cir.1988); Phillips v. Amoco Oil Co., 799 F.2d 1464, 1471 (11th Cir.1986), cert. denied, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).
The Court finds that the Plan in this case reserved Container Corporation's right to terminate, amend or modify the retiree medical benefits plan. Therefore, defendants did not breach a fiduciary duty by exercising a right expressly reserved in the Plan as a result of defendants' action being a business decision effected in defendants' capacity as settlor of the Plan. Since the Court finds that defendants were acting in their role as a plan settlor rather than as a fiduciary administering the terms of the Plan, the Court concludes that defendants owed no fiduciary duty to the plaintiffs to provide lifetime vested benefits and guaranteed premium rates. Moreover, the Court notes that an employer has no affirmative duty to provide any plan of insurance to its employees, much less a duty to provide a plan which entitles the participants vested lifetime medical benefits at guaranteed particular costs. See Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees, 740 F.2d 454, 456 (6th Cir.1984), cert. denied, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985).
The Court concludes that the statement in the notice indicating that the cost of the premiums would be half of the total premium does not constitute a fraudulent misrepresentation. Clark v. Olson, 726 S.W.2d 718, 719 (Mo.1987) (citing Ackmann v. Keeney-Toelle Real Estate Co., 401 S.W.2d 483, 488 (Mo.1966) (en banc)). At defendants' request, Aetna recommended premiums, and the premiums were divided in half and charged to the retirees. SPISC did not represent anywhere in the announcement that this figure represented what the actual costs of retirees' actual medical claims would be.
With respect to plaintiffs' motion for leave to file an amended and/or supplemental complaint, the Court concludes that this motion shall be denied. The determination whether to allow amendment of a complaint is left to the sound discretion of the court. Anderson v. Alpha Portland Industries, Inc., 836 F.2d at 1521. Moreover, plaintiffs did not file their motion to amend until three days before the time for filing of a motion for summary judgment as ordered by Magistrate Judge Buckles, after the discovery cut-off date of May 1, 1991 and almost four years after originally filing their complaint on June 23, 1987. Accordingly, the Court will deny plaintiffs' motion for leave to file an amended and/or supplemental complaint.

ORDER
Pursuant to the memorandum filed on this date herein,
IT IS HEREBY ORDERED that plaintiffs' motion to strike the "affidavit" of William Bennett and Exhibit No. 3 to the affidavit of Harold F. Fendius shall be and it is granted.
IT IS FURTHER ORDERED that plaintiffs' motion for leave (1) to file an amended and/or supplemental complaint and (2) to substitute class representative shall be and it is denied in part and granted in part. Accordingly, plaintiffs' motion for leave to substitute class representative shall be and *1000 it is granted without objection and plaintiffs' motion for leave to file an amended and/or supplemental complaint shall be and it is otherwise denied.
IT IS FURTHER ORDERED that defendants' motion for summary judgment shall be and it is granted.
IT IS FURTHER ORDERED that defendants' motion to set pre-trial conference shall be and it is denied as moot.
IT IS FURTHER ORDERED that defendants' motion to strike jury demand shall be and it is denied as moot.
NOTES
[1] On August 17, 1988, the Honorable George C. Smith, United States District Judge for the Southern District of Ohio, granted plaintiffs' motion for class certification and on January 20, 1989, the Court amended the order certifying the class so that the class is defined as consisting of the following:

all retirees of defendants who had been employed by Container Corporation of America and who worked within collective bargaining units represented by the United Paperworkers International Union, AFL-CIO, CLC, the Graphic Communications International Union, AFL-CIO, Locals No. 20 and 835, and who are participants or eligible for participation in the same medical insurance program provided for in the respective collective bargaining agreements between the Container Corporation of America and the above-named Unions.
United Paperworkers Int'l Union, AFL-CIO, et al. v. Jefferson Smurfit Corp., et al., (S.D. Ohio Jan. 20, 1989) (order amending the class certification order entered on August 31, 1988).
[2] Jefferson Smurfit purchased fifty percent of the assets of Container Corporation and Morgan Stanley Leveraged Equity Fund purchased the remaining fifty percent of Container Corporation's assets in October 1986. Since October 1986, Jefferson Smurfit has managed Container Corporation pursuant to a Management Services Agreement between Jefferson Smurfit and Morgan Stanley Leveraged Equity Fund. SPISC is a wholly-owned subsidiary of Jefferson Smurfit and provides pension and insurance services to Jefferson Smurfit and Container Corporation.
[3] The Second Circuit noted in Moore that:

With regard to an employer's right to change medical plans, Congress evidenced its recognition of the need for flexibility in rejecting the automatic vesting of welfare plans. Automatic vesting was rejected because the costs of such plans are subject to fluctuating and unpredictable variables. Actuarial decisions concerning fixed annuities are based on fairly stable data, and vesting is appropriate. In contrast, medical insurance must take account of inflation, changes in medical practice and technology and increases in the costs of treatment depending on inflation. These unstable variables prevent accurate predictions of future needs and costs.
Moore v. Metropolitan Life Ins. Co., 856 F.2d at 492.
[4] The Eighth Circuit has noted that the Supreme Court's remand in DeGeare was based on its decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and that the Supreme Court's holding in Bruch did not affect the basic contract interpretation principles underlying the central part of its decision in DeGeare. Howe v. Varity Corp., 896 F.2d at 1109 n. 4.