# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-3543

———————

Duane Hutchins; Marcia　　　　 *
Hutchins, individually　　　　 *
and as mother and natural　　　 *
guardian of the minor　　　　　 *
children of Duane Hutchins,　　 *
　　　　　　　　　　　　　　　 *
　　　Plaintiffs/Appellees,　　 *
　　　　　　　　　　　　　　　 *　Appeal from the United States
　　　　　　　v.　　　　　　　 *　District Court for the
　　　　　　　　　　　　　　　 *　District of Minnesota.
Champion International　　　　　 *
Corporation, Long Term　　　　　 *
Disability Benefits Plan　　　　 *
for Salaried Employees #506　　 *
(the "Plan"); Champion　　　　　 *
International Corporation,　　　 *
　　　　　　　　　　　　　　　 *
　　　Defendants/Appellants.　　 *

———————

Submitted:　March 14, 1997

Filed:　April 10, 1997

———————

Before MAGILL, MURPHY, Circuit Judges, and Goldberg,[1] Judge.

———————

MURPHY, Circuit Judge.

　　Champion International Corporation amended its Long-Term Disability Benefits Plan (plan) to exclude benefits to people who are incarcerated after Duane Hutchins, a plan participant, pled guilty to burglary and was sentenced to prison.　Hutchins brought

———————

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

this action to recover benefits lost because of his incarceration.  On cross-motions for summary judgment the district court ruled in favor of Hutchins on the basis that the amendment was invalid because it had not been approved in accordance with the procedure set out in the plan, and Champion appeals.  We reverse and remand.

Hutchins had been receiving benefits for total disability from Champion.  At the time of his crime, he was totally disabled and received approximately $3,000 per month in benefits.  After Hutchins went to prison, the plan administrator amended Champion's disability plan to exclude payments to those incarcerated; benefits resume upon release.[2]  The amendment went into effect on March 1, 1995, and benefits were not paid for the last 21 months Hutchins was imprisoned.[3]  Champion provided health care benefits to his dependants the entire time he was in prison, however.

Hutchins does not argue that Champion could not properly amend its program to exclude those who are incarcerated.  His quarrel is with the way the amendment was passed.  Hutchins believes that it  should have been approved by Champion's board of directors instead of the company's plan administrator, the company's pension and employee benefits committee (PEBC).  Hutchins also contends that  his benefits had vested and therefore should not have been terminated.  Champion responds that there was nothing wrong with the procedure used in adopting the amendment, the plan did not require the board of directors to approve this type of amendment, and the benefits had not vested.

---

[2]The plan states that disability benefits are to provide income to an employee who cannot work "as a result of" his or her disability.

[3]Hutchins was released from prison after judgment was entered in his favor, and Champion has filed an affidavit stating that disability payments to Hutchins have been resumed.

The district court concluded that the PEBC had abused its discretion in interpreting the amendment provision because no reasonable person could have interpreted the provision as it had. The amendment should have been approved by the board. Hutchins' claim that his benefits had already vested became moot, and the court did not decide it.

Champion appeals from the judgment, and we review the grant of summary judgment de novo. Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 268-69 (8th Cir. 1993). Summary judgment is proper if there is no issue of material fact, and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Both sides acknowledge that no material fact is in dispute.

I.

Champion believes the district court erred by invalidating the amendment. It claims that the approval of the amendment by the PEBC complied with the procedure set out in the plan. The plan gives the PEBC the discretion to interpret the amendment provision, and there was no abuse of that discretion. Champion contends the district court erred by applying its own interpretation of the plan, as opposed to reviewing the action of the PEBC under the correct standard.

The Employee Retirement Income Security Act (ERISA) 29 U.S.C. § 1001 et. seq., does not prohibit an employer from amending or terminating a welfare benefit plan at any time as long as its action is consistent with the rules of the plan. See Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 115 S. Ct. 1223, 1228 (1995).

We start with the terms of the plan itself.  This disability plan outlines an amendment process that differs depending on the content of the amendment.  Champion's plan states:

> [t]he Company hereby reserves the right to amend or terminate the Plan at any time by action of its Board of Directors; provided, however any amendment which is not a substantive amendment shall be made on behalf of [the Company] by the [PEBC].

A key issue in this case is what is meant by "substantive," and the plan does not define the term.

Both sides offer their own definition of "substantive." Champion argues it means "substantial impact on the company," and since the amendment denying benefits to anyone incarcerated would have little effect on the company, it was properly a matter for the PEBC.  Hutchins interprets substantive as meaning "of substance."  Since the amendment would have changed the substance of the program by altering who could receive benefits, it was substantive and had to be approved by the board.  Even if substantive means substantial, the amendment was substantial says Hutchins because it denied him benefits.

The plan provides the PEBC with the "sole, absolute and uncontrolled" discretion to administer the plan and states that this includes the power to interpret its provisions.  We therefore review the PEBC's interpretation of its plan under an abuse of discretion standard.  See Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996).  Since the PEBC has been given discretion to interpret the terms of the plan, we may not find the interpretation invalid merely because we disagree with it, but only if it is unreasonable.  Id. at 898-99.  An interpretation is "reasonable if a reasonable person could have reached a similar decision, given the evidence before him."  Id. at 899.

-4-

We have recognized five factors useful in determining whether an interpretation of a welfare benefits plan is reasonable. <u>Finley v. Special Agents Mut. Benefit Ass'n, Inc</u>, 957 F.2d 617, 621 (8th Cir. 1992). The factors are 1) whether the interpretation is consistent with the goals of the plan; 2) whether the interpretation renders any language in the plan meaningless or makes the plan internally inconsistent; 3) whether the interpretation conflicts with ERISA; 4) whether the interpretation has been consistent; and 5) whether the interpretation is contrary to the clear language of the plan. These factors present discrete questions; they need not be examined in any particular order. <u>See</u> <u>Lickteig v. Business Men's Assurance Co. of Am.</u>, 61 F.3d 579, 584-85 (8th Cir. 1995).

The PEBC's interpretation does not contradict the clear language of the plan. The words of the plan should be given their ordinary meaning. <u>Wilson v. Prudential Ins. Co. of Am.</u>, 97 F.3d 1010, 1013 (8th Cir. 1996). Ordinary meaning is determined by the dictionary definition of the word and the context in which it is used. <u>See, e.g.</u>, <u>Oxy USA, Inc. v. Hartford Ins. Group</u>, 58 F.3d 380, 382 (8th Cir. 1995). Hutchins contends "substantive" means "of substance," and Champion does not dispute that this is one meaning of the word. Champion points out, however, that "substantial" is another acceptable meaning of the word.

Under an abuse of discretion standard we do not search for the best or preferable interpretation of a plan term: it is sufficient if the PEBC's interpretation is consistent with a commonly accepted definition. <u>See</u> <u>Donoho</u> 74 F.3d at 899. The primary definition of "substantive" in the <u>American Heritage Dictionary</u> 1791 (3d ed. 1992), is "substantial; considerable," and this meaning is contained in other dictionaries as well. <u>E.g.</u>, <u>Webster's New Collegiate Dictionary</u> 1161-62 (8th ed. 1976).

Interpreting substantive as substantial is consistent with the context of the provision. The provision defines the decision-making procedure within the company. A reasonable person could interpret the provision as requiring substantial decisions to be made by the board of directors, leaving others to the committee that administers the program. In general a board is involved with major or substantial decisions in running a corporation, and leaves less important decisions to others. Cf. Edward Brodsky & M. Patricia Adamski, Law of Corporate Officers and Directors § 1:02 (1984) (noting that boards cannot manage all the business of a large company). The amendment would not appear to have had a substantial impact on Champion or the plan itself. Only a relatively small amount of benefits under the plan were involved, as Hutchins is the only participant affected and his benefits were discontinued only temporarily. There was no suggestion that any member of the board or any person on the PEBC objected to the amendment.

The PEBC's interpretation meets the first Finley factor to test reasonableness since the interpretation does not appear to conflict with the goals of the plan. The goals are not set out in the plan itself, but Hutchins asserts one purpose was to ensure that the board act on amendments that alter the substance of the program and that this goal was subverted by the action of the PEBC. His interpretation of the wording of the amendment provision is not unreasonable, but he is not the administrator. Champion delegated to the PEBC broad discretion to manage and administer the plan, and that included the sole power to interpret the provisions of the plan. Interpreting the amendment provision to require board action only on amendments with broad impact is not inconsistent with this generous delegation of power or apparent plan goals.

The PEBC's interpretation does not render the provision of the plan meaningless, and it is therefore consistent with the second <u>Finley</u> factor. Hutchins complains that there is no limit on the PEBC's ability to amend the plan without board approval if it can determine whether an amendment is substantial. The PEBC is limited to making reasonable interpretations of the plan, however. While there could be cases in which it would be difficult to determine if an amendment had a substantial impact on the plan or Champion, this is not one of them. As noted, the amount of benefits involved is relatively small from the overall perspective. Under various dictionary definitions the amendment could reasonably be interpreted in more than one way. It is enough that the administrator's interpretation of "substantive" was permissible under some of the definitions.

Finally, the PEBC's action does not violate the third or fourth <u>Finley</u> factors: the PEBC's interpretation does not conflict with ERISA, and there is no evidence that the PEBC has interpreted the provision inconsistently. ERISA does not require the board of directors of a company to approve changes to a welfare benefit plan, and it allows a plan to be modified or terminated at any time. Hutchins argued below that there is no evidence the PEBC has ever interpreted the provision before, and he does not claim on appeal the PEBC interpreted the plan inconsistently. <u>See</u> <u>Finley</u>, 957 F.2d at 621 (claimant must show the interpretation was inconsistent).

In short, the PEBC's interpretation of the plan was reasonable and the amendment denying benefits to those incarcerated was validly adopted.

II.

Hutchins also claims that because his benefits were vested, it was improper for Champion to have discontinued them. The district court did not reach this issue because it found the amendment invalid, but both sides briefed and argued it on appeal and there are no disputed facts. The issue can therefore be decided as a matter of law, and we exercise our discretion to resolve it. See Talley v. United States Postal Serv., 720 F.2d 505, 508 (8th Cir. 1983)(an issue may be decided without remand when the facts are undisputed).

ERISA does not require that welfare benefits vest, and the burden is on the claimant to show that his welfare benefits had vested under the terms of the plan. See Howe v. Varity Corp., 896 F.2d 1107, 1109 (8th Cir. 1990). Hutchins points to the following provision of the plan as evidence that his benefits had vested:

> 12.3 Title to Assets - No Participant or beneficiary shall have any right to or interest in any assets of the Plan upon termination of his or her employment or otherwise, except as provided from time to time under this Plan, and then only to the extent of the benefits payable under the Plan to such Participant or out of the assets of the Plan.

He contends that because he was receiving benefits as a totally disabled participant, section 12.3 of the plan ensures that the benefits cannot be taken away until he is no longer disabled or turns 65. He cites Howe for the proposition that benefits vest for a disability occurring prior to a plan's attempted termination.

Champion argues that benefits are not vested unless a plan explicitly provides for it. Its plan explicitly states that benefits can be terminated at any time. The amendment could therefore properly terminate benefits while Hutchins was in prison. Section 12.3 indicates that a participant has no right or interest in the plan's assets "except as provided . . . under this Plan" and

Hutchins has not identified any provision of the plan which could create a vested right.

Hutchins' benefits did not vest under the terms of the plan. The plan specifically provided Champion with the authority to terminate or modify it. In the absence of contrary language in the plan, Hutchins did not have a right to vested benefits. <u>Howe</u> does not control as Hutchins claims, because the plan there differed. The <u>Howe</u> plan contained language that limited the ability of the administrator to terminate or amend benefits once a participant was already entitled to receive them. <u>Howe</u> 896 F.2d at 1109-10. There is no similar limitation on Champion's right to terminate or modify its plan, and in fact section 1.3 of the plan indicates that benefits "shall be subject to the provisions of this Plan as amended and restated."

## III.

Since we find no abuse of discretion on the part of the plan administrator and no vested right to receive benefits, we reverse and remand for entry of judgment in favor of Champion.[4]

A true copy:

Attest:

CLERK: U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]In light of this disposition, the standing issue involving Marcia Hutchins, Duane Hutchins' ex-wife and a named plaintiff, is moot.

-9-