Frederick S. WALTHER, et al., Plaintiffs,

v.

PENSION PLAN FOR SALARIED EMPLOYEES OF the DAYTON–WALTHER CORP., et al., Defendants.

No. C–3–93–99.

United States District Court, S.D. Ohio, Western Division, at Dayton.

Sept. 14, 1994.

David M. Cook, Kircher, Robinson, Cook, Newman & Welch, Cincinnati, OH, William T. Payne, Schwartz, Steinsapir, Dohrmann &

Sommers, Los Angeles, CA, for plaintiffs Frederick S. Walther, William D. Walther, Eugene Nowacki and James McGraw.

Frank H. Stewart, Charles D. Lindberg, Gregory P. Rogers, Taft, Stettinius & Hollister, Cincinnati, OH, for defendants Pension Plan for Salaried Employees of Dayton–Walther Corp., Dayton–Walther Pension Committee, Dayton Walther Corp., Kelsey Hayes Co. and Varity Corp.

## *ORDER*

CARL B. RUBIN, District Judge.

This matter is before the Court pursuant to reference to the United States Magistrate Judge as a special master pursuant to 28 U.S.C. Section 636(b)(2), Rule 53 of the Federal Rules of Civil Procedure, and the Order of General Reference in the United States District Court for the Southern District of Ohio Western Division at Cincinnati. Pursuant to such reference the Magistrate held hearings at which evidence and testimony were presented, reviewed the pleadings and filed with this Court on February 22, 1994 a findings of fact and Recommendations for Disposition. The report and recommendation was recommitted to the United States Magistrate Judge for a reconsideration of all matters raised in the objections and any responses thereto. The United States Magistrate Judge issued a supplemental report and recommendation on July 6, 1994. Subsequently plaintiffs' counsel filed objections to such Report and Recommendation and a hearing was waived.

The Court has reviewed the comprehensive findings of the magistrate and considered de novo all of the filings in this matter. Upon consideration of the foregoing the Court does determine that such Recommendation should be adopted.

Accordingly the motion to certify a class action is denied and the defendants' motions for summary judgment on plaintiffs' insurance plan claims and plaintiffs' pension plan claims are hereby GRANTED.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATIONS

MERZ, United States Magistrate Judge.

This case is before the Court on Plaintiff William Walther, Eugene Nowacki, and James McGraw's (collectively the "Insurance Plan Plaintiffs") Motion for Class Certification, (Doc. 35), Defendants' Motion for Summary Judgment as to the Insurance Plan Plaintiffs' claims, (Doc. 38), and Defendants' Motion for Summary Judgment as to Plaintiff Frederick S. Walther and William D. Walther's (collectively "the Pension Plan Plaintiffs") pension plan claims, (Doc. 22). The issues have been fully briefed by the parties, (Doc. 35, 36, 39, 48; 38, 39, 46, 51; 22, 25, 26, 32), the Court has heard oral argument on Defendants' motion as to the pension plan claims, (Doc. 32), and the Motions are ripe for decision.

Plaintiffs brought this action against Defendants The Dayton–Walther Corporation, the Dayton–Walther Corporate Pension Committee, The Pension Plan for Salaried Employees of the Dayton–Walther Corporation (the "Pension Plan"), Kelsey–Hayes Company, and Varity Corporation (collectively "the Defendants") alleging particular violations of the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1001 *et seq.* ("ERISA"). The Pension Plan Plaintiffs challenge certain of the Defendants' actions with respect to the Pension Plan in which they are participants. The Insurance Plan Plaintiffs challenge certain of the Defendants' actions with respect to the salaried retirees Insurance Plan in which they are participants. In addition, as noted above, the Insurance Plan Plaintiffs have made class action allegations and seek class certification of their claims.

## PRELIMINARY FACTS

Dayton–Walther Corporation was founded in Dayton, Ohio, in 1906, by the Walther family. Plaintiffs Frederick S. Walther and William Walther, who are brothers, are members of the founding family, and they each worked for the company. William Walther retired as president in 1982, and continued to serve on the Board for approximately three (3) years after his retirement. Frederick S.

Walther retired as president on December 31, 1986. Both William Walther and Frederick S. Walther have participated in the Pension Plan since their respective retirements. These Plaintiffs were the last two presidents of the company it was sold to Defendant Varity Corporation ("Varity") in 1986, for a multi-million dollar figure. Defendant Kelsey–Hayes Company ("Kelsey–Hayes") is, like Dayton–Walther, a subsidiary of Varity. Kelsey–Hayes and Dayton–Walther are included in Varity's Kelsey–Hayes Group of Companies, which is one of Varity's three operating groups.

Dayton–Walther acts as the plan sponsor of the Pension Plan and Dayton–Walther and Kelsey–Hayes serve as the plan administrator. The Pension Plan is administered from the offices of Kelsey–Hayes by its employees. Defendant the Dayton–Walther Pension Committee ("the Committee") serves as the Pension Plan sponsor's internal organization responsible for the direction, control, and oversight of the Pension Plan. Members of the Committee are appointed directly by senior management of Dayton–Walther, including its chairman, president, and chief executive officer.

In approximately November, 1988, Varity chose First Wisconsin Trust Company as Master Trustee of the Pension Plan. Varity made this choice in spite of the Committee's determination that the National Bank of Detroit was the organization best suited to serve as Master Trustee.

Effective October 1, 1991, the net assets of the Office Employees' Pension Plan of Citation Walther Corporation ("Citation Walther Plan") were transferred into the Pension Plan. As a result, the Pension Plan assumed all of the Citation Walther Plan's liabilities.

The Pension Plan Plaintiffs allege that Dayton–Walther has violated ERISA in that it breached its fiduciary duties by: (1) failing to hold regular meetings of the Pension Committee; (2) failing to direct, control, and oversee the operation of the Pension Plan; (3) failing to properly, adequately, and prudently conduct the affairs of the Pension Plan; (4) failing to review and determine the performance of service providers of the Pension Plan; (5) abdicating and surrendering its authority and fiduciary duties as to the Pension Plan, including direction and oversight of the Pension Plan and of the Pension Plan's service providers, at the dictate of Varity, or otherwise, to Varity; (6) allowing Varity to direct and impose the selection of the Master Trustee for the Pension Plan despite the Pension Committee's specific rejection of Varity's choice; and (7) yielding to the dictates of Varity and allowing the liabilities of the Citation Walther Plan to be merged into the Pension Plan at the direction and control of Varity. These Plaintiffs allege that Dayton–Walther and the Pension Committee violated ERISA in that they: (1) breached their fiduciary duty by allowing Varity to direct and control the choice and selection of investment managers for the Plan; (2) failed to diligently review and determine the impact and effect of the merger of the Citation Walther Plan with the Pension Plan; (3) failed to act for the exclusive purpose of providing benefits to participants and beneficiaries of the Pension Plan; and (4) failed to act with the care, skill, prudence, and diligence required by ERISA. The Pension Plan Plaintiffs allege that Kelsey–Hayes violated ERISA by breaching its fiduciary duty by participating in the control and domination of Dayton–Walther, including the Pension Committee, and by its knowledge of the fiduciary breaches of both Dayton–Walther and Varity, without reasonable efforts under the circumstances to remedy those breaches. With respect to Varity, the Pension Plan Plaintiffs claim that Varity and/or Kelsey–Hayes have exercised actual control of Dayton–Walther to such an extent and in such a manner that Dayton–Walther has ceased to function as an independent corporation. These Plaintiffs allege that Varity, Kelsey–Hayes, and Dayton–Walther are responsible and jointly and severally liable for Dayton–Walther's and the Pension Committee's acts, omissions, and breaches of fiduciary duty.

The Pension Plan Plaintiffs seek, *inter alia,:* (1) a complete audit and review of the Pension Plan, its activities and investments by an outside, independent auditor selected by the Court; (2) appointment of non-Varity, non-Dayton-Walther, non-Kelsey-Hayes fidu-

ciaries, to serve as administrators of the Pension Plan, and to direct, oversee, and control its operation and functions, or in the alternative, an Order requiring Dayton–Walther to appoint a functioning Pension Committee, and an Order that the Pension Committee be permitted to, and in fact, perform its fiduciary duties with respect to the Pension Plan without the domination, control, or interference of Varity or of Kelsey–Hayes, or of Varity through Kelsey–Hayes; (3) recoupment from all Defendants jointly and severally of any and all losses suffered as a result of the breaches of fiduciary duty which they have alleged as well as others that may have occurred; (4) a complete review and analysis of the performance and operation of the Master Trustee, First Wisconsin Trust Company, and/or any and all investment managers ordered selected by, or selected at the insistence of, Varity; (5) a determination as to the legality and propriety of the merger of the Citation Walther Plan into the Pension Plan; (6) an order requiring Varity and Kelsey–Hayes, or Varity through Kelsey–Hayes, to cease and desist its domination and control of Dayton–Walther and the Pension Committee in the performance of fiduciary duties with respect to the Pension Plan; and (7) a declaration that Dayton–Walther, Varity, and Kelsey–Hayes are jointly and severally liable for the acts, omissions, and breaches of fiduciary duties alleged as well as others that may have occurred.

Plaintiffs Eugene Nowacki and James McGraw also worked for Dayton–Walther. Mr. Nowacki retired as corporate traffic manager in October, 1984, and Mr. McGraw retired as a salaried employee effective May 1, 1990. Mr. Nowacki and Mr. McGraw, as well as William Walther, have, since their respective retirements, participated in Dayton–Walther's salaried retirees Insurance Plan ("the Insurance Plan"). Since their respective retirements William Walther and Eugene Nowacki have received Insurance Plan benefits at no cost to them for premium contributions. Mr. McGraw has, since his retirement, received Insurance Plan benefits at a fixed premium cost.

Dayton–Walther has maintained a salaried retirees Insurance Plan for over 40 years.

Salaried employees who retired prior to September 1, 1988, receive these benefits at no cost for any amount of premium contributions. Salaried employees who retired on or after September 1, 1988, receive the same benefits but have been required to contribute toward the premium costs. Dayton–Walther operates the Insurance Plan, and the plan is administered by Kelsey–Hayes and/or Dayton Walther.

On or about April 26, 1993, Dayton–Walther notified the salaried retirees Insurance Plan participants of its intent to implement a new medical plan for salaried retirees, effective January 1, 1994. The new plan includes changes such as, *inter alia:*

—The imposition of increased and/or first-time premium contribution costs for all plan participants;

—An increase in per person and family deductibles from $150.00 per person/$450.00 per family to $300.00 per person/$600.00 per family;

—Annual out-of-pocket maximum cost increase from $750.00 per person/$1,500.00 per family to $2,000.00 per person/$4,000.00 per family;

—Elimination of dental coverage and transfer of 100% of premium costs for dental coverage to the retirees, from coverage with no additional charge under the existing plan.

The Insurance Plan Plaintiffs allege that pursuant to operation of the plan, the retirees insurance benefits for both pre-September 1, 1988, and post-September 1, 1988, retirees were intended to and did vest in the retirees for the duration of their lives and the lives of their covered dependents. These Plaintiffs allege further that no formal plan document which establishes the Dayton–Walther salaried retirees Insurance Plan now exists, and that none has existed at any time. In addition, Plaintiffs claim that Dayton–Walther has failed, since at least 1976, and continuing to date, to promulgate, issue, and distribute a summary plan description describing the salaried retirees Insurance Plan and that Dayton–Walther has failed to advise salaried retiree Insurance Plan participants under what circumstances and conditions these benefits were subject to modification,

amendment, or termination. Plaintiffs allege that Varity, by virtue of domination and control of Dayton–Walther and Kelsey–Hayes, is a fiduciary with respect to the Insurance Plan. The Insurance Plan Plaintiffs allege that Defendants' termination of the current, existing salaried retirees Insurance Plan breaches the terms of the plan and therefore Defendants have breached the fiduciary duty owed to plan participants to administer the plan in accordance with its terms. The Insurance Plan Plaintiffs essentially allege that these actions on the part of Defendants with respect to the salaried retirees Insurance Plan violate of ERISA. In addition, these Plaintiffs allege Defendants are promissorily estopped from implementing any changes to the existing salaried retirees Insurance Plan because they received repeated promises, representations, and assurances, both oral and otherwise, that salaried retirees insurance benefits would last throughout retirement, and they relied on those representations.

The Insurance Plan Plaintiffs seek, *inter alia*, a declaratory judgment that: (1) the salaried retirees Insurance Plan provide benefits for retirees and their eligible dependents which last throughout retirement; (2) the salaried retirees Insurance Plan provide these benefits at either no premium cost to retirees, or at a premium cost fixed at retirement; (3) Defendants are estopped from denying salaried retirees lifetime benefits under the plan at either no premium cost, or at a premium cost fixed at retirement; and (4) Defendants are jointly and severally liable for the breaches of fiduciary duty and violations of ERISA with respect to the salaried retirees Insurance Plan. These Plaintiffs also seek orders that Defendants: (1) establish and maintain the salaried retirees Insurance Plan pursuant to a written instrument, in accordance with the Court's declaratory judgments as to coverage for these benefits throughout retirement at either no premium cost, or at a premium cost fixed at retirement; (2) promulgate and distribute a summary plan description of the salaried retirees Insurance Plan, pursuant to ERISA, 29 U.S.C. Sec. 1022; and (3) be preliminarily and, upon trial of this matter to the Court on the merits, permanently enjoined from terminating the salaried retirees Insurance Plan, and from modifying or amending the terms of that plan in any adverse to Plaintiffs and the putative class.

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The Insurance Plan Plaintiffs seek class action certification and have described the proposed class as all participants in the Dayton–Walther salaried retirees Insurance Plan who have received insurance benefits since their retirement at either no premium cost or at a premium cost fixed at the time of retirement, and who currently receive these benefits. Plaintiffs have also described two subclasses for which they seek certification: (1) all participants who qualify as members of the class, and who retired prior to September 1, 1988, and who have received retiree insurance benefits under the plan at no premium cost to them since their retirement; and (2) all participants who qualify as members of the class, and who retired on or after September 1, 1988, and who have received retiree insurance benefits under the plan at a premium cost fixed at their retirement.

The Federal Rules of Civil Procedure mandate a two-step process to determine if an action is maintainable as a class action. *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 579 (S.D.Ohio 1993). *First,* the court must determine whether the four prerequisites to a class action are present. *Id.* (emphasis in original). These four prerequisites, referred to as numerosity, commonality, typicality, and adequacy of representation are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately represent the interests of the class.

*Id., citing,* Fed.R.Civ.P. 23(a).

*Second,* if the foregoing prerequisites are satisfied, the court must then decide whether one of the factual situations described in

Rule 23(b) has been met. *Mayo*, 148 F.R.D. at 579 (emphasis in original).

The Plaintiffs, as the party seeking certification of the class, bear the burden of establishing the required elements. *Id., citing, Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). In determining whether to certify a class, a court is prohibited from considering the merits of the action. *Mayo, supra, citing, Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). For purposes of a class certification motion, a court must accept as true the factual allegations contained in the complaint. *Mayo, supra, citing, Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2nd Cir.1978); *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

Defendants oppose the Insurance Plan Plaintiffs' motion for class certification on the grounds that they have not established the commonality and typicality requirements of Rule 23. However, this Court will, as an initial matter, address the prerequisites of numerosity and adequacy of representation.

### Numerosity

Rule 23 does not create a specific number which it deems to be sufficiently "numerous" to permit class certification. *See, Senter, supra.* Impracticality of joinder must be determined in the context of the particular litigation. *Akron Center for Reproductive Health v. Rosen*, 110 F.R.D. 576, 581 (N.D.Ohio 1986) (citation omitted).

The Insurance Plan Plaintiffs allege that the class for which they seek certification numbers approximately 200. Plaintiffs claim that documents and records in the Defendants' possession will establish the identity of class members.

This Court concludes that joinder of all members of the proposed class is impracticable and therefore Plaintiffs have met the "numerosity" prerequisite of Rule 23(a).

### Adequacy of Representation

The requirement of adequacy of representation, "includes but is broader than" the typicality test. *Mayo*, 148 F.R.D. at 581 (citation omitted). The Sixth Circuit has identified two criteria for determining whether the representation of the class will be adequate: (1) the representative must have common interests with unnamed members of the class, and (2) the representative will vigorously prosecute the interests of the class through competent counsel. *Id., citing, Senter*, 532 F.2d at 525. The court in *Bowen v. General Motors Corp., AC Spark Plug Div.*, 542 F.Supp. 94 (N.D.Ohio 1981), identified three factors to determine if the first, "common interests" prong of this test has been met: "whether the representative was a member of the class," "the nature and extent of the named party's stake in the outcome", and the named party's "familiarity with the conditions he seeks to challenge on behalf of the class." *Mayo*, 148 F.R.D. at 581, *citing, Bowen*, 542 F.Supp. at 99.

The Insurance Plaintiffs meet the "common interest" prong of the *Senter/Bowen* test. Each Plaintiff is a salaried retiree from Dayton–Walther, has participated in the salaried employees' welfare benefits plan which is the subject of this litigation, and each Plaintiff has a stake in the outcome of this litigation. In addition, each Plaintiff, as a long term salaried employee of Dayton–Walther, as well as a participant in the Insurance Plan, is familiar with the conditions that this action seeks to redress. The named Plaintiffs are members of the putative classes, and share with the unnamed members of the putative classes the common interest of preventing Defendants from changing, altering, and/or amending the salaried retiree Insurance Plan.

As to the second prong of the *Senter/Bowen* test, the court in *Bowen* pointed to two factors to determine if the named representative[s] will vigorously prosecute the interests of the class. *Mayo*, 148 F.R.D. at 582. The court should look to whether plaintiff has retained qualified counsel and whether the named representative and counsel investigated class claims during the pretrial period and presented the class claims at trial. *Id., citing, Bowen*, 542 F.Supp. at 100. As noted by the *Mayo* court, the Court in *Bowen* developed the test in a post-trial review of

its previous certification of the plaintiff class. *Mayo,* 148 F.R.D. at 582 n. 10. Consequently, the *Mayo* court interpreted the test to require an examination of counsel's representation of plaintiff through the present time. *Id.*

In support of their position that they will vigorously prosecute the interests of the class through qualified counsel, Plaintiffs point to counsel's involvement in several ERISA actions, his authoring of a variety of papers and presentations on the subjects of litigation, ERISA, and class actions, and his being a contributing editor in the 1993 supplement to the work, *Employee Benefits Law,* (BNA, 1989). Counsel has represented that he is experienced in class action litigation, particularly with respect to ERISA litigation. A review of the pleadings in this case makes it clear to this Court that to date, Plaintiffs' counsel has in fact vigorously represented Plaintiffs in the current litigation.

This Court has no reason to conclude that Plaintiffs' counsel does not have the experience and competence to adequately represent the class or that he will not vigorously pursue this matter on behalf of the putative class.

For the foregoing reasons, this Court concludes that Plaintiffs have met the "adequacy of representation" prerequisite of Rule 23(a).

The Court now turns to the two prerequisites of Rule 23(a) which Defendants claim Plaintiffs have not established, specifically, commonality and typicality.

*Commonality*

The commonality requirement of Rule 23(a) is satisfied "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation." *Mayo,* 148 F.R.D. at 580, *citing, Day v. NLO, Inc.,* 144 F.R.D. 330, 333 (S.D.Ohio 1992). However, it has been held in retiree insurance benefit cases brought under ERISA, that the commonality requirement is not satisfied where the Court must examine

alleged oral and other individualized promises to determine whether plaintiffs have a claim. *See, Alday v. Container Corp. of America,* No. 87–488–Civ–J–16, 1988 WL 236038, 1988 U.S.Dist. LEXIS 18421 (M.D.Fla. Sept. 2, 1988), *aff'd,* 906 F.2d 660 (11th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991).[1] This conclusion is consistent with *Mayo, supra,* wherein the Court determined that the commonality prerequisite would not be met with respect to persons who did not utilize [credit application] forms substantially similar to the forms used by the named plaintiffs. *Mayo,* 148 F.R.D. at 580.

In their First Amended Complaint, the Insurance Plan Plaintiffs allege, *inter alia:*
45. No formal plan document which establishes the Dayton–Walther salaried retirees Insurance Plan now exists, and none has existed at any time.
46. Dayton–Walther Corporation has failed, since at least 1976, and continuing to date, to promulgate, issue and distribute a summary plan description describing the Dayton–Walther salaried retirees Insurance Plan.

Doc. 19 at ¶¶ 45, 46.

As noted *supra,* in determining whether to certify a class, a court is prohibited from considering the merits of an action and must accept as true the factual allegations contained in the complaint.

Accepting as true the Insurance Plan Plaintiffs' allegation that no plan document and/or summary plan description exists, this Court concludes that the Insurance Plan Plaintiffs are unable to establish the prerequisite of commonality for the purposes of Rule 23. In the absence of at least one common written document distributed to all members of the class, in which an objective determination as to its misleading nature could be made, there is no means of handling the Insurance Plan Plaintiffs' claim in a class action. *See, Alday,* 1988 WL 236038 at *2–3, 1988 U.S.Dist. LEXIS at *7; *accord, Mayo,* 148 F.R.D. at 580–81.

---

**1.** In affirming the district court, the Eleventh Circuit determined that a promissory estoppel theory was not available to the plaintiff and it was therefore immaterial that the other employ-

ees were not joined in the class. The Circuit Court affirmed the district court's denial of class certification on that basis alone. *Alday,* 906 F.2d at 667.

*Typicality*

▮ With respect to the requirement of typicality, the Sixth Circuit has explained that "a representative's claims need not always involve the *same* facts or law provided there is a common element of fact or law [which unites the claims of the representative and the class]." *Mayo*, 148 F.R.D. at 581, *citing, Senter*, 532 F.2d at 525 (emphasis in original). The typicality requirement is intended to assure that the representatives' claims are similar enough to those of the class so that the representatives will adequately represent the class. *General Telephone Co. v. Falcon*, 457 U.S. 147, 152, 102 S.Ct. 2364, 2367, 72 L.Ed.2d 740 (1982). The commonality and typicality requirements are closely related in that they each serve to assist in the determination of whether the claim of the named plaintiff and those of the class are so interrelated that the interests of the absent class members will be protected. *Id.* at 157, 102 S.Ct. at 2370.

▮ Similar to the discussion with respect to the commonality requirement, *supra*, in the alleged absence of at least one common written document distributed to all members of the putative class, this Court cannot say that the Insurance Plan Plaintiffs' claims and defenses are typical of all potential class members. Accordingly, this Court concludes that Plaintiffs have not established the typicality prerequisite of Rule 23(a).

Because this Court concludes that the Insurance Plan Plaintiffs have not established the "commonality" and "typicality" requirements of Rule 23(a), the Court need not address whether Plaintiffs have met any one of the factual situations described in Rule 23(b).

For all of the foregoing reasons, the Insurance Plan Plaintiffs' Motion for Class Certification should be DENIED.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Nevertheless, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a Rule 50 motion for judgment as a matter of law. *See, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PENSION PLAN CLAIMS

As noted above, the Pension Plan Plaintiffs filed this action alleging that certain of Defendants' actions with respect to the Dayton–Walther Pension Plan violate ERISA. A

more particularized review of the background facts with respect to the Pension Plan is appropriate at this juncture.

Dayton–Walther has been sponsoring the Pension Plan, as amended, since June 25, 1955. Dayton–Walther has provided all of the Pension Plan's funds as the plan prohibits participants from making contributions. The Pension Plan is a defined benefit plan which provides a fixed benefit to its beneficiaries based on the applicable benefit formula. Those who receive retirement benefits under the Pension Plan receive the same monthly benefit regardless of the investment performance of the plan. The Pension Plan Plaintiffs have been beneficiaries of the Pension Plan since their respective retirements and there is no claim that either of them has not received all the money each of them is entitled to receive under the Pension Plan.[2]

Prior to 1989, the assets of Dayton–Walther's employee benefit plans were held in the Dayton–Walther Master Trust. The Pension Plan was administered by the Pension Committee and the day-to-day operations of the Pension Plan were handled by Janet Walton ("Walton"), a Dayton–Walther employee.

The Dayton–Walther Board of Directors passed a resolution effective September 30, 1989, amending the plans to transfer investment policy decisions to the Dayton–Walther Board, to permit the plans to participate in the Varity Master Pension Trust which is administered by Varity's North American Pension Committee. Jill Wellman ("Wellman"), Kelsey–Hayes' Director of Compensation and Benefits, supervised and handled the day-to-day operations of the plan and Walton provides technical assistance.

The North American Pension Investment Committee meets quarterly and, *inter alia*, selects and monitors the performance of the outside advisors, actuaries, investment advisors, and auditors of the plans in the Varity Master Pension Trust. From 1988 through the current time, the compensation, benefits, and actuarial firm of Towers, Perrin, Foster & Crosby ("TPF & C") and SEI Financial Consultants ("SEI") have provided assistance in selecting investment advisors to the plan.

In 1988, Dayton–Walther selected First Wisconsin as Plan Trustee (now known as "Firstar"). Firstar had served as trustee of the Varity Master Pension Plan before Dayton–Walther decided to participate in the Varity Master Trust Plan and it had quoted lower administrative costs to Dayton–Walther. As Plan Trustee, Firstar does not make any investment decisions, nor does it exercise any discretionary functions with respect to the assets of the fund. Firstar essentially performs ministerial duties, follows the investment advisors' directions, pays the participants the funds to which they are entitled, and is responsible for transmitting accurate and timely reports to the Varity Master Pension Trust and to the plan administrators. Firstar does not select the investment managers of the funds and its performance as plan trustee is reviewed by the North American Pension Investment Committee of Varity.

As noted *supra*, effective October 1, 1991, the Pension Plan was merged with the Citation Walther Plan. TPF & C provided an actuarial certification that "each participant of either the Dayton–Walther Plan or the Citation Plan will be entitled to a benefit on October 1, 1991 (if either Plan then terminated) which is greater than or equal to the benefit he would have been entitled to on September 30, 1991 (if the Dayton–Walther Plan had then been terminated.)"

Each year, the Pension Plan has been reviewed and certified by independent actuarial firms such as TPF & C and Buck Consultants, and audited by independent certified public accounting firms such as Price Waterhouse and KPMG Peat Marwick. These certifications and audits have shown that the plan has been funded as follows:

Fiscal year 1989—excess assets: $1,243,113.00—percent of overfunding: 104.19%
Fiscal year 1990—excess assets: $ 322,883.00—percent of overfunding: 101.04%
Fiscal year 1991—excess assets: $2,388,651.00—percent of overfunding: 107.25%
Fiscal year 1992—excess assets: $2,370,169.00—percent of overfunding: 107.88%
Fiscal year 1993—excess assets: $5,274,638.00—percent of overfunding: 115.00%

---

2. Since his retirement in 1982, William Walther has received approximately $512,688.84 from the pension plan. Frederick S. Walther has received approximately $375,000.00 from the pension plan since his retirement in 1986.

Defendants argue that they are entitled to summary judgment on the basis that none of their complained-of acts violate ERISA. Specifically, Defendants' position is that the North American Pension Investment Committee has scrupulously reviewed the performance of the plan to the benefit of the beneficiaries, the selection of First Wisconsin as plan trustee satisfied their ERISA fiduciary duties, the merger of the plan with the Citation Walther plan was specially authorized by ERISA and Defendants did not breach any fiduciary duties imposed by ERISA in merging the plans, and Kelsey–Hayes and Varity are not liable as the Pension Plan Plaintiffs cannot establish violations of any ERISA fiduciary duties.

■■■ The Pension Plan Plaintiffs have filed their memorandum in opposition pursuant to Rule 56(f). These Plaintiffs have also submitted the affidavit of counsel in support of the arguments they raise in their memorandum.

The Pension Plan Plaintiffs' essentially argue that a determination of the issues on summary judgment at this time is premature because no opportunity for discovery has occurred as to their claims, much less an adequate opportunity for discovery. Specifically, Plaintiffs argue that they are entitled to and need discovery with respect to the administration of the plan, the selection of First Wisconsin as plan trustee, the merger of the plan with the Citation Walther Plan, and with respect to their allegations of Varity's alleged stripping of Dayton–Walther assets for Varity's benefit.

Rule 56(f) reads:

(f) **When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order that is just.

Fed.R.Civ.P. 56(f).

Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious. A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required by Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. Where ... a party fails to carry his burden under Rule 56(f), postponement of a ruling on a motion for summary judgment is unjustified.

*Emmons v. McLaughlin,* 874 F.2d 351, 356–57 (6th Cir.1989), *quoting, Willmar Poultry Co. v. Morton–Norwich Products, Inc.,* 520 F.2d 289 (8th Cir.1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976).

A brief review of relevant parts of the procedural history of this matter is appropriate at this point.

Plaintiffs filed this action on March 8, 1993, (Doc. 1), and filed their Amended Complaint on July 6, 1993. (Doc. 19).[3] Defendants filed their present motion on July 21, 1993, and in support of the motion, filed the extensive affidavit of Jill B. Wellman. (Doc. 23). The Pension Plan Plaintiffs filed their Rule 56(f) memorandum on August 11, 1993, (Doc. 25), and Defendants replied on August 25, 1993. (Doc. 26).

---

**3.** Plaintiffs originally filed their Amended Complaint on June 30, 1993, (Doc. 18). A review of the two pleadings indicates that the June 30, 1993, Amended Complaint does not reflect a Certificate of Service. *Id.* The Amended Complaint filed July 6, 1993, has a Certificate of Service with a service date of June 30, 1993. *Id.* Otherwise, the two pleadings do not differ.

Plaintiffs took Ms. Wellman's deposition on October 8, 1993, and October 29, 1993. They filed Volume I on December 6, 1993, and Volume II on January 7, 1994. Plaintiffs also took Ms. Walton's deposition on October 6, 1993, and they filed that deposition on December 6, 1993.[4] This Court has carefully reviewed those depositions and concludes that neither deponent testified at her respective deposition as to any facts which contradict the facts as stated *supra.* As an aside, the Court notes that the Pension Plan Plaintiffs have not sought to amend or supplement their memorandum in opposition since those depositions were taken.

On September 1, 1993, Plaintiffs filed their lay witness list, the purpose of which was to disclose the persons they would call as lay witnesses at trial. (Doc. 30). Plaintiffs identified several persons who will testify on Plaintiffs' behalf with respect to Plaintiffs' Pension Plan claims and particularly with respect to Plaintiffs' claims of ERISA fiduciary duty breaches.[5] These persons include, *inter alia,* Pension Plan Plaintiffs Frederick S. Walther and William D. Walther, as well as Richard Phillips, Robert Duplain, and Terence Geremski. *Id.* On November 8, 1993, the Pension Plan Plaintiffs identified their expert witness, Claude Poulin, F.S.A. (Doc. 43). Plaintiffs expect that Mr. Poulin will testify that the requirements of section 208 of ERISA, 29 U.S.C. Sec. 1058, (*see, infra* ), were not met when the Pension Plan merged with the Citation Walther Plan. *Id.*

While the Court recognizes that the Pension Plan Plaintiffs did not file their lay and expert witness lists until after August 11, 1993, when they filed their Rule 56(f) memorandum, the Court notes that Plaintiffs identified, *inter alia,* the above-referenced lay witnesses in their May 27, 1993, answers to Defendants' interrogatories. *See,* Doc. 25, Ex. A. It is clear, then, that Plaintiffs had available to them at least by May 27, 1993, information from lay witnesses, two of whom

are Plaintiffs in this action with respect to their Pension Plan claims. Yet, Plaintiffs did not file affidavits from any of these persons to contradict Ms. Wellman's affidavit testimony. Again as an aside, as is the case with the Wellman and Walton depositions, the Pension Plan Plaintiffs have not sought to amend or supplement their memorandum in opposition since they filed their lay and expert witness lists.

For the foregoing reasons, this Court concludes that the Pension Plan Plaintiffs' arguments that there has not been an adequate time for discovery are not well taken. The Court also concludes that for purposes of Rule 56(f), Plaintiffs have failed to satisfy their burden of establishing any beneficial effects of a continuance or extension of discovery. Accordingly, the Plaintiffs' Motion under Rule 56(f) is DENIED.

The Court now turns to the merits of Defendants' motion for summary judgment as to the Pension Plan Plaintiffs' claims.

Section 404(a)(1) of ERISA reads in relevant part:

**Sec. 1104. Fiduciary duties**

**(a) Prudent man standard of care**

(1) ... [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such mat-

---

4. In addition, on October 6, 1993, Defendants filed the August 5–6, 1993, deposition of James McGraw and the August 5, 1993, deposition of William Walther. However, the thrust of these depositions goes to the insurance plan Plaintiffs' claims.

5. Plaintiffs' witness list identifies certain persons who "will testify" and certain persons whom Plaintiffs "will call". *See,* Doc. 30. It is clear to this Court that the persons who "will testify" are Plaintiffs' own witnesses, while the persons whom Plaintiffs "will call" are Defendants' witnesses.

ters would use in the conduct of an enterprise of a like character and with like aims;

. . . . .

29 U.S.C. Sec. 1104(a)(1).

ERISA recognizes the inherent tension between the desire that employees retire with adequate retirement income and the practical internal pressures exerted on the trustees charged with preserving the assets of the pension fund. *Holliday v. Xerox Corp.*, 732 F.2d 548, 551–52 (6th Cir.), *cert. denied*, 469 U.S. 917, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984). While ERISA resolves this conflict resoundingly on the side of the employees, Congress did not intend the Act to penalize employers for exercising their discretion to make rational economic decisions which are both in the best interest of the preservation of the fund and which are also not adverse to the employer's interest. *Id.* at 552.

 ERISA requires a fiduciary to defray reasonable expenses of administering the plan. *United Steelworkers of America v. Cyclops Corp.*, 860 F.2d 189, 198 (6th Cir. 1988), *citing*, 29 U.S.C. Sec. 1104(a)(1).

Pure business decisions are not governed by fiduciary standards. *Sutter v. BASF Co.*, 964 F.2d 556, 562 (6th Cir.1992).

BASF's decision to merge the two plans in 1961 clearly constituted the establishment or amendment of a Pension Plan and is therefore a business decision that should not be overturned by the court in the absence of violation of state or federal law. *Id.; see also, Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993).

ERISA provides that:

A Pension Plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan after September 2, 1974, unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger,

consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had then terminated). . . .

29 U.S.C. Sec. 1058.

Even assuming that merger decisions are fiduciary decisions, the fiduciary duties imposed by ERISA are met if the requirements of 29 U.S.C. Sec. 1058 are satisfied. *See, Cyclops*, 860 F.2d at 200; *see also, Dougherty v. Chrysler Motors Corp.*, 840 F.2d 2 (6th Cir.1988).

 The Pension Plan Plaintiffs do not dispute that Dayton–Walther's Board of Directors amended the Pension Plan, effective September 30, 1989, to permit participation in the Varity Master Pension Trust, nor do they dispute that Varity's North American Pension Committee, which administers the Trust meets at least quarterly and that the Pension Plan is reviewed, certified and audited once a year. In addition, Wellman's uncontradicted affidavit testimony shows that since the Pension Plan has started its participation in the Varity Master Pension Trust, it has been consistently overfunded.[6] As an aside, the Court notes that the Pension Plan Plaintiffs do not dispute that since their respective retirements, they have received all of the benefits due under the plan.

 Wellman's uncontradicted affidavit establishes that the plan's selection of First Wisconsin ("Firstar") resulted in the plan's ability to defray the reasonable expenses of administering the plan. *See also,* Doc. 25, Ex. F at Bates Stamp No. A000034 (October 27, 1988, report to the Pension Committee).

 As noted above, the merger of the Pension Plan with the Dayton–Walther plan was a business decision and not a fiduciary decision subject to challenge as a violation of ERISA's fiduciary duties. Even assuming that the merger were a fiduciary decision,

---

**6.** While the "percent of overfunding" figures referenced *supra* may lead one to believe that the plan's assets have been overfunded by that percent after it has paid participants and beneficiaries for the particular fiscal year, the Court understands that those figures reflect the plan's assets prior to payment of benefits. In other words, an overfunding figure of 115.00% indicates that the plan's assets are such that it is able to pay 100.00% of the benefits due with an additional 15.00% of that figure remaining in the fund.

the merger satisfied the requirements of section 208 of ERISA.

The Pension Plan Plaintiffs would have the Court focus on the business relationship between Dayton–Walther and Kelsey Hayes and Varity. However, that business relationship is not subject to ERISA's requirements. Rather, the focus is on ERISA's requirements with respect to the protection of the plan's assets, participants and beneficiaries. The evidence before the Court establishes that Defendants have not violated any of ERISA's fiduciary duties with respect to the Pension Plan.

For all of the foregoing reasons, this Court concludes that there is no genuine issue of material fact as to the Pension Plan Plaintiffs' claims and that Defendants are entitled to judgment as a matter of law, dismissing these claims with prejudice.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO INSURANCE PLAN CLAIMS

As noted above, the Insurance Plan Plaintiffs filed this action essentially seeking declaratory and injunctive relief against Defendants in order to prohibit the scheduled modification of the salaried retirees Insurance Plan. As also noted above, Dayton–Walther has announced that effective January 1, 1994, the plan will change in that it will require contributions by the participating retirees and the amount of the deductible will increase. The essence of the Insurance Plan Plaintiffs' claim is that the announced changes in the Insurance Plan violate the health care plan and therefore ERISA; that the announced changes constitute a breach of fiduciary duties arising under ERISA; and that by failing to maintain its health care plan pursuant to a written instrument and by failing to promulgate and distribute a summary plan description ("SPD") with respect to the salaried retiree Insurance Plan, Defendant Dayton–Walther violated ERISA. The Insurance Plan Plaintiffs also allege that Dayton–Walther is promissorily estopped from changing the plan.

A more detailed review of the background facts with respect to the salaried retirees Insurance Plan is appropriate at this juncture.

William Walther testified that the Dayton–Walther salaried retirees Insurance Plan has always been maintained pursuant to a written instrument, which was set forth in the insurance booklet plan documents and SPDs distributed to employees. The 1979 SPD, issued while William Walther was president of Dayton–Walther, applied to both salaried employees and retirees. The 1979 plan states in relevant part:

On any premium due date, the Plan Administrator may terminate the policy(ies) or, subject to the insurance company's approval, may modify, amend or change the provisions, terms and conditions of the policy(ies). No consent of any participant or any other person referred to in the policy(ies) shall be required to terminate, modify, amend or change the policy(ies).

On September 28, 1983, Frederick S. Walther, who was then president of Dayton–Walther, wrote to all retirees advising that effective October 1, 1983, Dayton–Walther was changing the retiree health Insurance Plan. The preeminent change in the plan was that all retirees, regardless of when they retired, were required to pay all medical charges up to a specific deductible amount, and they were then reimbursed 80% of any charges above the deductible amount. Prior to these changes, Dayton–Walther had paid all medical expenses. In addition, the October, 1983, changes included providing a prescription drug card to retirees. Previously, no prescription drug card was provided under the plan.

The plan document which covered the October, 1983, Insurance Plan reads in relevant part:

On any premium date the Plan Administer may terminate the policy(ies) or, subject to the insurance company's approval, may modify, amend or change the provisions, terms and conditions of the policy(ies). No consent of any participant or any other person referred to in the policy(ies) shall be required to terminate, modify, amend, or change the policy(ies).

Effective January 1, 1986, Dayton–Walther changed the Insurance Plan by changing insurance companies from Equitable to Prudential. This change affected all retirees, including past retirees.

In June, 1987, Dayton–Walther distributed a "Notice of New Health Care Benefit Changes" to all salaried retirees. The notice essentially advised that Dayton–Walther was changing the Insurance Plan effective July 1, 1987, by discontinuing the prescription drug card and by instituting "PruPass". Retirees were required to use "PruPass" in order to receive full reimbursement under the plan. "PruPass" necessitated second opinions and pre-certification of major medical procedures. If the covered retirees and/or their eligible dependents failed to use "PruPass", reimbursement under the plan was reduced by 20%. The SPD which referenced the July 1, 1987, plan read in relevant part:

**Loss of Benefits:**

You must continue to be a member of the class to which this plan pertains. Failure to do so may result in partial or total loss of your benefits. In addition, the Employer maintains the right to modify or terminate the Plan.

Effective September 1, 1988, Dayton–Walther changed the Insurance Plan to require persons retiring on or after that date to contribute $15.00, $30.00, or $45.00 per month (depending upon the number dependents the retiree had who were covered by the plan) towards insurance premiums. In addition, since September 1, 1988, at the time they retire, retirees have signed an "Election and Authorization Form" which reads in relevant part:

I, the undersigned retiree, wish to remain a participant in the group health care coverage, and hereby certify that the deduction of $___ from my pension check for health care and dental coverage is made at my request and hereby authorize the Company to transmit such deduction to the insurance company. I understand that I may revoke such authorization effective as of the first day of any month after the date on which I deliver written notice to that effect to the Company. The health care

coverage is subject to change and to a rate increase each year.

Effective January 1, 1990, Dayton–Walther changed the retiree contributions. The company required all retirees already making contributions towards premiums to pay $22.00, $44.00, or $66.00 per month towards premiums (depending upon the number of dependents the retiree had who were covered by the plan). These payments were clearly an increase from the previously established (1988) figures.

As noted *supra,* Dayton–Walther notified salaried retirees that it intended to change the salaried retirees Insurance Plan effective January 1, 1994. Essentially, Dayton–Walther will require contributions from all retirees in the amount of $45.60 or $91.20 (depending upon the number of dependents the retiree has who are covered) for pre-Medicare eligible retirees and $4.00 or $8.00 per month for Medicare eligible employees. In addition, the deductibles and out-of-pocket maximum payments will be raised and the prescription drug care will be reinstituted. Further, the deductible for dental insurance will be eliminated and the retirees will pay the entire premium for dental coverage.

■ ERISA simply does not prohibit a company from eliminating previously offered benefits that are neither vested nor accrued. *Adams v. Avondale Industries, Inc.,* 905 F.2d 943, 948 (6th Cir.), *cert. denied,* 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990), *citing, Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).

Congress expressly exempted employee welfare benefit plans from stringent vesting, participation, and funding requirements. Congress recognized the differences between welfare benefit plans and Pension Plans, and we discern no basis for finding mandatory vesting in ERISA of retiree welfare benefits. We believe that the legislature, rather than the courts, should determine whether mandatory vesting of retiree welfare benefits is appropriate.

*In re White Farm Equipment Co.*, 788 F.2d 1186, 1193 (6th Cir.1986); *see also, Gill v. Moco Thermal Industries*, 981 F.2d 858, 860 (6th Cir.1992) (health Insurance Plans are employee welfare plans for which there is no vesting requirement under ERISA); *Adams*, 905 F.2d at 947 (Congress chose not to impose vesting requirements on welfare benefit plans for fear that placing such a burden on employers would inhibit the establishment of such plans); *Musto v. American General Corp.*, 861 F.2d 897, 901 n. 2 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989) (ERISA establishes minimum vesting standards for pension benefits making some of such benefits non-terminable, but Congress declined to make welfare benefits non-terminable).

■ Although medical insurance benefits do not vest automatically under ERISA, such benefits may vest by agreement between the parties:

> The parties themselves may set out by agreement or by private design, as set out in plan documents, whether retiree welfare benefits vest, or whether they may be terminated. In construing such agreements, courts may draw inferences or make presumptions as this court has done in construing collective bargaining agreements providing welfare benefit plans.

*White Farm*, 788 F.2d at 1186; *see also, Gordon v. Barnes Pumps Co.*, 999 F.2d 133 (6th Cir.1993) (under certain circumstances, employee welfare benefits may vest, but this can only be by private agreement between the parties).

The law governing modification and termination of retiree Insurance Plans was further articulated in *Boyer v. Douglas Components Corp.*, 986 F.2d 999 (6th Cir.1993):

> Even though a welfare benefit plan is not subject to mandatory vesting requirements, the parties can agree to vest a welfare benefit plan. *International Resources Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 301 (6th Cir.1991), *cert. denied*, 504 U.S. 973, 112 S.Ct. 2941, [119 L.Ed.2d 565] (1992); *White Farm*, 788 F.2d at 1193. To determine whether the parties have agreed to vest the welfare benefit plan, we apply principles of federal common law to

> ascertain the parties' intent. *Armistead v. Venitron Corp.*, 944 F.2d 1287, 1297–98 (6th Cir.1991); *White Farm*, 788 F.2d at 1192–93.

> To ascertain the parties' intent, we first examine the plan documents. *Musto v. American Gen. Corp.*, 861 F.2d 897, 900–01 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). The written terms of the plan documents control and cannot be modified or superseded by the employer's oral undertaking. *Id.* at 910. However, if the plan documents are ambiguous with respect to a particular term, then, under federal common law, a court may use traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence. *See White Farm*, 788 F.2d at 1193.

*Boyer*, 986 F.2d at 1005.

■ The issue in the present case becomes whether Dayton–Walther set out in its plan documents an agreement or "private design" that health care benefits would vest upon retirement or whether such benefits are subject to change.

As the Court in *White Farm*, *supra*, indicated, the starting point for determining the Insurance Plan Plaintiffs' rights under the health care plan is the plan documents. *See also, Musto*, 861 F.2d at 900. ERISA requires that every employee benefit plan be established and maintained pursuant to a "written instrument". 29 U.S.C. Sec. 1102(a)(1). A program under which an employer provides medical insurance benefits constitutes such a plan, *see i.e.*, 29 U.S.C. Sec. 1002(1), and the insurance policies themselves are the written instruments required by law. *See, Musto*, 861 F.2d at 901. Courts have also looked at written SPDs required by ERISA, *see, i.e.*, 29 U.S.C. Sec. 1022, as evidence of the terms and conditions of employee welfare plans. *See, Musto*, 861 F.2d at 904–06; *see also, White Farm*, 788 F.2d at 1193–94.

As noted *supra*, Dayton–Walther stated in the 1979, 1983, and 1987, SPDs that it reserved the right to "terminate" or "modify"

the Plan. In addition, since September 1, 1988, retirees have signed acknowledgments that their benefits were "subject to change and a rate increase". This Court concludes that there is nothing ambiguous with respect to the language in the relevant documents. The Court also concludes that there was not an agreement between the parties nor a private design whereby the retiree welfare benefits at issue were intended to become, or did become, vested. Dayton–Walther reserved its right to amend the health Insurance Plan, and in fact did so five times over the last eleven years. Indeed, some of those amendments were made while William Walther (as well as Frederick S. Walther) served the company as president.

This Court concludes that the Insurance Plan Plaintiffs' claim that Defendants do not have the right to modify the plan must fail.

■ The Sixth Circuit has held that a company does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefit plan. *Adams,* 905 F.2d at 947, *citing, Musto,* 861 F.2d at 911; *see also, Drennan v. General Motors Corp.,* 977 F.2d 246, 251 (6th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993) (existing precedent has recognized the distinction between an employer's prerogative to initiate discretionary policy decisions such as creating, amending, or terminating a particular plan as compared to its fiduciary responsibilities to administer an existing plan for the benefit and interest of its participant-employees).

This issue was addressed by the court in *United Paperworkers v. Jefferson Smurfit Corp.,* 771 F.Supp. 992 (E.D.Mo.1991), *aff'd.,* 961 F.2d 1384 (8th Cir.1992).[7] In *United Paperworkers,* the plaintiffs challenged the defendants' unilateral increase of group medical insurance premium contributions and unilateral reduction of maximum lifetime medical benefits. The plaintiffs alleged, *inter alia,* that the defendants' actions constituted a breach of their fiduciary duty under ERISA. The court noted:

An employer acts as a fiduciary when administering a welfare plan in accordance with the terms, but not when deciding how and under what terms the employer should provide benefits in a plan. *Musto v. American General Corp.,* 861 F.2d 897, 911 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). If the employer is acting in his capacity as a settlor of the plan, his conduct as to business decisions in implementing the plan are not regulated by the fiduciary duties outlined in the ERISA statute. *Id.* Consequently, an employer's decision to provide a less favorable plan of benefits and related decisions regarding plan design fall into the category of settlor acts and are not subject to review under the fiduciary standards of ERISA. *Hickman v. Tosco Corp.,* 840 F.2d 564, 566 (8th Cir.1988); *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).

*United Paperworkers,* 771 F.Supp. at 999.

Defendants' decision to modify the Insurance Plan is not a fiduciary decision and therefore cannot give rise to fiduciary liability under ERISA. Accordingly, the Insurance Plan Plaintiffs' claim with respect to fiduciary liability fails.

As noted above, the Insurance Plan Plaintiffs allege that Defendants failed to promulgate and distribute a SPD, and failed to establish and maintain the plan pursuant to a written instrument and therefore violated ERISA. Plaintiffs' position seem to be that this violation results in a prohibition against amending the plan.

■ Assuming *arguendo* that Plaintiffs are correct in their position that Dayton–Walther failed to perform the above-referenced procedures, that deficiency does not give rise to the substantive remedy of prohibiting plan amendments.

We do not believe, however, that Congress intended that any plan failing to comply with section 1102(b) would, for that reason alone, become unamendable. Plaintiffs

---

7. As an aside, the Court notes that counsel for Plaintiffs in the present litigation represented the

plaintiffs in the *United Paperworkers* litigation. *United Paperworkers,* 771 F.Supp. at 993.

have failed to show any detrimental reliance based on the Defendant's failure to comply with Section 1002(b), and, under these circumstances, we decline to impose the substantive remedy of prohibiting plan amendment in response to Defendant's procedural violations. *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) (absent a defendant's bad faith for failure to comply with ERISA's reporting requirements, employees ordinarily have no substantive remedy under the Act).

*Adams,* 905 F.2d at 949.

This Court concludes that the Insurance Plan Plaintiffs' claim that they are entitled to a substantive remedy for alleged procedural violations of ERISA must fail.

██ The Insurance Plan Plaintiffs allege that they received repeated promises, representations, and assurances, both oral and otherwise, that salaried retirees' insurance benefits would last throughout retirement, that they relied on those representations to their detriment, and therefore Dayton–Walther is promissorily estopped from amending the plan.

Plaintiffs' argument contravenes a basic principle of ERISA that the terms of a plan may not be modified or superseded by oral statements or other extrinsic evidence. *See, i.e., Gordon,* 999 F.2d at 137, *citing, Musto,* 861 F.2d at 907. In affirming *United Paperworkers, supra,* the Eighth Circuit noted

> The ERISA requirement that terms of a welfare benefit plan be committed to writing was intended to insure that employees could rely on the terms of the formal written plan provided to them without fear that unwritten contrary terms would later surface.

*United Paperworkers,* 961 F.2d at 1386.

While these plaintiffs would be helped by a decision in their favor, such a ruling would not only fly in the face of ERISA's plain language but would also decrease protection for future employees and retirees. *Id.*[8]

This Court concludes that the Insurance Plan Plaintiffs' claim that Defendants are promissorily estopped from amending the plan fails.

For all of the foregoing reasons, this Court concludes that there is no genuine issue of material fact as to the Insurance Plan Plaintiffs' claims and that Defendants are entitled to judgment as a matter of law.

### CONCLUSION

It is therefore recommended that:

1) Plaintiffs' Motion for Class Certification, (Doc. 35), be denied;

2) Defendants' Motion for Summary Judgment as to Plaintiffs' Pension Plan claims (Doc. 22), be granted; and

3) Defendants' Motion for Summary Judgment as to Plaintiffs' Insurance Plan claims, (Doc. 38), be granted.

February 22, 1994.

### SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This case is before me on recommittal from District Judge Sandra S. Beckwith. (Doc. 60).

On February 22, 1994, I issued a Report and Recommendations recommending that Plaintiffs' Motion for Class Certification be denied and that Defendants' Motions for Summary Judgment be granted. (Doc. 53).

Specifically, in my prior Report, I recommended that the Insurance Plan Plaintiffs' Motion for Class Certification be denied on the basis that they have not established the "commonality" and "typicality" requirements of Fed.R.Civ.P. 23(b). Specifically, I concluded that, accepting as true the Insurance Plan Plaintiffs' allegation that no plan document and/or summary plan description exists, there is no means of handling the Insurance Plan Plaintiffs' claims in a class action because in the absence of at least one com-

---

**8.** At this juncture, the Court notes that in affirming *United Paperworkers,* the Eighth Circuit specifically found that the district court was correct in relying on *Musto* in concluding that the company's statements to retirees were made in its capacity as settlor of the plan and not as fiduciary and thus there was no breach of fiduciary duty. *Id.*

mon written document distributed to all members of the class, an objective determination as to its alleged misleading nature could not be made.

With respect to Defendants' Motion for Summary Judgment as to the Pension Plan Plaintiffs' claims, I noted in my prior Report that those Plaintiffs had filed their Memorandum in Opposition pursuant to Fed.R.Civ.P. 56(f) essentially arguing that they could not fully respond to Defendants' Motion for Summary Judgment because there had not been adequate time for discovery. However, after reviewing the relevant parts of the procedural history of the case, I concluded that the Pension Plan Plaintiffs' arguments were not well taken and that for purposes of Rule 56(f), they had failed to satisfy their burden of establishing any beneficial effects of further discovery. As to the merits of Defendants' Motion for Summary Judgment, I determined that the evidence established that Defendants had not violated any of ERISA's fiduciary duties with respect to the Pension Plan and that Defendants were entitled to judgment on the Pension Plan Plaintiffs' claims.

In addressing Defendants' Motion for Summary Judgment as to the Insurance Plan Plaintiffs' claims, I determined that the claims that Defendants did not have the right to modify the Plan, that Defendants violated ERISA's fiduciary duties when they did modify the Plan, that Plaintiffs are entitled to a substantive remedy for alleged procedural violation of ERISA, and that Defendants are promissorily estopped from amending the Plan, all must fail and that Defendants were entitled to judgment on the Insurance Plan Plaintiffs' claims.

Plaintiffs have filed forty-one [1] specific Objections to my February 22, 1994, Report and Recommendations (Doc. 58) as well as a Memorandum in Support of those Objections (Doc. 59). Defendants have responded (Doc. 63).

In concluding that Plaintiffs' Motion for Class Certification should be denied, I reviewed the applicable law as well as the

1. Although the Objections are numbered 1 through 42, there is no Objection numbered 28.

allegations in Plaintiffs' First Amended Complaint, *Id.* at 7–13, and that review is incorporated herein by reference.

With respect to the Insurance Plan Plaintiffs' Motion for Class Certification, I previously concluded that Plaintiffs failed to meet the "commonality" and "typicality" requirements of Rule 23 and therefore their Motion should be denied. *See,* Doc. 53 at 11–13. Plaintiffs' Objections 7, 8, and 9 relate to that conclusion. Plaintiffs' position is basically that I erred in relying on *Mayo v. Sears Roebuck & Co.,* 148 F.R.D. 576, 579 (S.D.Ohio 1993), and *Alday v. Container Corp. of America,* No. 87–488–Civ–J–16, 1988 WL 236038, U.S.Dist. LEXIS 18421 (M.D.Fla. Sept. 2, 1988), *aff'd,* 906 F.2d 660 (11th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991), particularly since *Mayo* is not an ERISA case.

I am not persuaded by Plaintiffs' arguments. As I noted in my prior Report, the insurance plan Plaintiffs allege in their Amended Complaint that, *inter alia,* no plan document and/or summary plan description exists and in the absence of at least one common written document distributed to all members of the class, there is no means of handling the insurance plan Plaintiffs' claim in a class action. While *Mayo* is indeed not an ERISA case, *Alday* is an ERISA action and the *Alday* court's conclusion is consistent with *Mayo.* Accordingly, I again conclude that the Insurance Plan Plaintiffs' Motion for Class Certification should be denied and Plaintiffs' Objections 7, 8, and 9 should be overruled.

At this juncture, I note that Plaintiffs filed the depositions of Susan Smith ("Smith") and Claude Poulin ("Poulin") on March 2, 1994, and the deposition of Jack Forstadt ("Forstadt") on March 17, 1994. (Doc. 56, 57, 61). Smith's deposition was taken on December 16, 1993, Poulin's deposition was taken on December 22, 1993, and Forstadt's deposition was taken on February 4, 1994. *Id.*

Plaintiffs' Objections 1, 10, 18, 20, 23, 24, and 34 essentially relate to their claim that I

*See,* Doc. 58 at 11–12.

erred by recommending that summary judgment be granted on certain of their pension plan claims without benefit of reviewing Poulin's deposition. The crux of Plaintiffs' argument on this issue is that they filed a Rule 56(f) response to Defendants' Motion for Summary Judgment on the pension plan claims alleging that they had insufficient time for discovery and could not, at that time, respond to Defendants' arguments.

In my February 22, 1994, Report, I reviewed the law which is applicable to a Rule 56(f) response as well as the procedural history of this matter as it relates to Plaintiffs' Rule 56(f) response. (Doc. 53 at 17–20). That review is incorporated herein by reference. Based on my review, I concluded that Plaintiffs had failed to satisfy their burden of establishing any beneficial effects of a continuance or extension of discovery and therefore denied their Rule 56(f) motion.

As noted in my prior Report, Plaintiffs filed their Rule 56(f) response on August 11, 1993, and Defendants replied on August 25, 1993. Subsequent to the filing of those pleadings, Plaintiffs took additional depositions, but never sought to amend or supplement their Rule 56(f) response. Similarly, although Poulin's deposition was taken on December 22, 1993, Plaintiffs did not file that deposition until March 2, 1994, nor did they seek to amend or supplement their prior response. Plaintiffs' delayed filing of Poulin's December, 1993, deposition does not satisfy their Rule 56(f) burden. Poulin's deposition testimony was clearly available to Plaintiffs' prior to my February 22, 1994, Report, yet Plaintiffs made no attempt to provide that testimony in support of their response. Accordingly, Plaintiffs' Objections 1, 10, 18, 20, 23, 24, and 34 should be overruled.

Plaintiffs' Objection 22 (as well as Objections 20 and 21) relates to their position that they did not have an opportunity to submit supplemental arguments on their pension plan claims. However, the record does not support their argument.

As noted above, Plaintiffs filed their Rule 56(f) response to Defendants' Motion for Summary Judgment on August 11, 1993, Defendants replied on August 25, 1993, and I issued my Report on February 22, 1994.

During the six (6) month period of August 15, 1993, to February 22, 1994, Plaintiffs never attempted to amend or supplement the arguments they presented in their August 11, 1993, pleading. Plaintiffs do not now present any reason why, in spite of the availability of additional deposition testimony during that six (6) month period, (see, Doc. 53 at 18–19; Doc. 56, 57, 61), they did not attempt to present additional arguments. Accordingly, Objection 22 should be overruled, and for these reasons, as well as for the reasons discussed, *supra*, Objections 20 and 21 should be overruled.

Plaintiffs' Objection 19 addresses the depositions of Jill Wellman ("Wellman") and Janet Walton ("Walton"). Plaintiffs' position is that I did not give a fair reading to these depositions, and they specifically argue that both Wellman and Walton testified that PBGC Form 1 1991 indicated an underfunding of the Dayton–Walther Salaried Pension Plan as a result of the merger of that Plan with the Citation–Walther Plan. In addition, Plaintiffs' Objection 29 addresses Wellman's deposition testimony with respect to this same issue of under/overfunding.

Contrary to Plaintiffs' argument, neither Wellman nor Walton testified that the Plan was underfunded based on the Plan's annual financial reports required by ERISA. The PBGC Form upon which Plaintiffs rely is a form used to calculate PBGC insurance premiums and is not reflective of the financial status of the fund for purposes of ERISA. Plaintiffs' Objections 19 and 29 should be overruled.

Plaintiffs' Objections 11, 17, and 30, relate to my observations with respect to the Pension Plan Plaintiffs' receipt of pension benefits under the Plan. Plaintiffs argue that I incorrectly "focused on issues" which are irrelevant to this action.

Of course, one of the primary purposes of ERISA is to protect "the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, [and] to meet minimum standards of funding

...". 29 U.S.C. § 1001(c). In enacting ERISA Congress also noted that "many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans" and that "owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered ...". 29 U.S.C. § 1001(a).

In view of the stated Congressional purposes for enacting ERISA, Plaintiffs' Objections 11, 17, and 30 concerning their receipt of benefits from the Plan focus on irrelevant issues and should be overruled.

Plaintiffs' Objections 16, 21, 25, and 32 challenge my conclusions with respect to the merger of the Dayton–Walther and Citation–Walther Plans as that merger relates to Plaintiffs' claims that the merger did not meet the standards of § 208 of ERISA, 29 U.S.C. § 1058, and was a violation of ERISA's fiduciary duty standards.

Plaintiffs argue that they do not allege that the decision to merge the two plans was a fiduciary decision. As I noted in my prior Report, controlling Sixth Circuit law is that pure business decisions are not governed by ERISA's fiduciary standards. *See, e.g., Sutter v. BASF Co.,* 964 F.2d 556, 562 (6th Cir.1992); *Drennan v. General Motors Corp.,* 977 F.2d 246, 251 (6th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993).

As I also noted in my prior Report, even assuming that merger decisions are fiduciary decisions, ERISA's fiduciary standards are satisfied if the requirements of § 208 of ERISA are satisfied. *See, United Steelworkers of America v. Cyclops Corp.,* 860 F.2d 189, 200 (6th Cir.1988); *see also, Dougherty v. Chrysler Motors Corp.,* 840 F.2d 2 (6th Cir.1988). Section 208 essentially requires that participants be entitled to a benefit immediately after the merger which is equal to or greater than the benefit they would have been entitled to immediately prior to the merger.

Plaintiffs challenge my conclusions with respect to the satisfaction of the § 208 requirements on the basis of the Poulin's and Forstadt's testimony. However, even considering those witnesses' testimony, Plaintiffs' position is not well taken. In certifying that as a result of the merger of the two plans participants were entitled to a benefit which was equal to or greater than the benefit they would have received immediately prior to the merger, actuary Susan Smith used an 8.25% interest rate. In testifying that the plan was underfunded, Poulin used an interest rate of 6.16%, the rate required by the PBGC insurance forms, not the rate applicable to calculating § 208 requirements. With respect to § 208, Forstadt testified that any interest rate in the 8% to 9% range was reasonable. Poulin admitted that when using the 8.25% interest rate, the plan was overfunded. Accordingly, I again conclude that the merger of the two plans satisfied ERISA's § 208 requirements and ERISA's fiduciary standards were not violated. Plaintiffs' Objections 16, 21, 25 and 32 should be overruled.

In Objections 2, 15, and 31, Plaintiffs challenge my conclusions with respect to the selection of First Wisconsin [now known as "Firstar"] as plan trustee.

As I noted in my prior Report, ERISA requires a fiduciary to defray reasonable expenses of administering the plan. *Cyclops Corp.,* 860 F.2d at 198 (citation omitted).

Plaintiffs argue that I erred in relying on Wellman's testimony because she did not have personal knowledge of the facts surrounding First Wisconsin's selection. Plaintiffs also argue that I erred with respect to the date First Wisconsin was selected as trustee.

Wellman testified that she based her testimony on the work which she has performed since she began her employment with Kelsey–Hayes on December 1, 1989. In addition, she based her testimony on her familiarity with documents which are in her custody and under her control.

With respect to the date on which First Wisconsin was selected as plan trustee, the evidence shows that Dayton–Walther selected First Wisconsin in 1988. When Dayton–Walther actually became a part of the Varity Master Trust in 1989, First Wisconsin remained trustee. While the observations I

made in my prior Report on this issue may be confusing, *see, e.g.,* Objection 15, my conclusion remains the same. First Wisconsin, which had served as trustee of the Varity Master Trust prior to Dayton–Walther entering Varity, quoted lower administrative costs to Dayton–Walther. Further, First Wisconsin does not make any investment decisions, nor does it exercise any discretionary functions with respect to the fund's assets. Rather, it performs ministerial duties. I again conclude that the selection of First Wisconsin as plan trustee did not violate any ERISA duties and that by selecting First Wisconsin, Defendants met their duty to defray reasonable expenses of administering the plan. Plaintiffs' Objections 2, 15, and 31 should be overruled.

Plaintiffs' Objection 13 also challenges my references to and reliance on Wellman's testimony. As noted above, however, Wellman began her employment with Kelsey–Hayes on December 1, 1989, and based her testimony on personal knowledge as well as her knowledge of and familiarity with documents under her control and in her custody. Accordingly, Plaintiffs' Objection 13 should be overruled.

Plaintiffs' Objection 12 and 26 relate to my conclusions that Dayton–Walther's Board of Directors amended the pension plan, effective September 30, 1989, to allow participation in the Varity Master Pension Trust.

Even assuming that Plaintiffs do dispute that the Dayton–Walther Board of Directors amended the pension plan, effective September 30, 1989, to allow participation in the Varity Master Pension Trust, the Board's Exhibit C to the Board's resolution establishes that the Amendment to the Dayton–Walther Corporation Salaried Employees' Pension Plan which provides for participation in the Varity Trust became "effective as of September 30, 1989." There is simply no evidence which opposes that document. Plaintiffs' Objections 12 and 26 should be overruled.

In Objection 14, Plaintiffs dispute my conclusion that from 1988 through the current time the compensation, benefits, and actuarial firm of TPF & C and SCI Financial Consultants have provided assistance in selecting investment advisors to the plan. Plaintiffs' position seems to be that I erred because TPF & C and SCI did not provide assistance separately and independently to the Dayton–Walther Salaried Employees Pension Plan.

A review of my prior Report shows that in referencing TPF & C's and SCI's assistance to the plan, the plan I was referencing was Varity Master Pension Trust and not the Dayton–Walther Salaried Employees Pension Plan. Plaintiffs' Objection 14 should be overruled.

Plaintiffs' Objection 27 addresses my observation in my prior Report that the North American Pension Committee meets at least quarterly and that the plan is reviewed, certified, and audited once a year. Plaintiffs' position is that this observation is objectionable because it is irrelevant and unrelated to any issues they have raised in their [Amended Complaint].

In reading my prior Report as a whole, it is clear that several of the facts I reviewed and incorporated are offered by way of historical background. Contrary to Plaintiffs' position, that offering does not indicate a misunderstanding of Plaintiffs' claims in this litigation. The material facts which directly relate to Plaintiffs' ERISA claims show that Defendants did not violate ERISA. Plaintiffs' Objection 27 should be overruled.

Plaintiffs' Objection 33, Plaintiffs' disputes my observation that the business relationship between Dayton–Walther, Varity, and Kelsey Hayes are not subject to ERISA's requirements. Contrary to Plaintiffs' assertion, I did not interpret Plaintiffs' allegations as alleging an ERISA claim with respect to that business relationship. The thrust of my February 22, 1994, Report makes it clear that my conclusions were based on Plaintiffs' ERISA claims. Objection 33 should be overruled. As with the pension plan claims in this case, when I addressed Plaintiffs' insurance plan claims in my prior Report, I reviewed the applicable law and facts. (Doc. 53 at 23–32). That review is incorporated herein by reference.

Plaintiffs' Objections 3, 4, 5, 6, 35, 36, 37, 38, 39, and 40 address the insurance plan claims in this case. With respect to those

claims, Plaintiffs did not file a Rule 56(f) response to Defendants' Motion for Summary Judgment, and they do not argue that they had insufficient time for discovery with respect to those claims.

Plaintiffs argue that I erred in rejecting their claim that no written plan document for the retiree health insurance plan ever existed. Plaintiffs' position, however, is contradicted by the deposition testimony of William Walther, a Plaintiff in this action, and by the September 28, 1993, letter to retirees from Frederick Walther ("F. Walther"), also a Plaintiff in this action. *See, e.g.,* Doc. 53 at 24. In addition, contrary to Plaintiffs' argument in support of their Objections, the testimony of Janet Walton ("Walton"), James Vance, ("Vance"), and F. Walther does not support their claim that no written plan document exists which applies to retirees.[2] Walton testified that the insurance booklets were used for both retired and active employees, Vance testified that he is "unaware" of such documents, and F. Walther's affidavit is silent on the issue.

Plaintiffs also argue that I erred in concluding that the insurance plan documents unambiguously reserve the right to terminate, modify, or amend the plan. Plaintiffs' position is that the reservation of rights is ambiguous, yet they do not offer any substantive argument as to how or why it is ambiguous.

Plaintiffs do not dispute that the insurance plan has been changed five (5) times since 1983. However, they argue that the January, 1994, changes are different in character from the changes made in the previous years. Plaintiffs' position seems to be that the previous changes involved either increases in benefits, or modifications that were administrative in nature and which did not result in a change in the financial responsibilities of the participants. Presumably, Plaintiffs' position is that the previous administrative modifications differ from the January, 1994, changes which require retirees to pay contributions and which will increase the deductible. Contrary to Plaintiffs' position, the 1983, 1987,

1988, and 1990, changes in the plan affected the participants' financial obligations. Even assuming that such changes are administrative modifications, they do not differ in character from the 1994 changes.

In essence, Plaintiffs have acknowledged in their memorandum in support of their Objections that if the reservation of rights in the plan is valid, then their breach of fiduciary claim is without merit. *See,* Doc. 59 at 18. Because I again conclude that the reservation of rights is valid, Plaintiffs' breach of fiduciary claim must fall.

Plaintiffs also acknowledge that a written plan document cannot be modified or superseded by oral statements and therefore when a written plan document exists, a claim based on promissory estoppel must fail. *See, Id.* at 19. Plaintiffs argue that they base their promissory estoppel claim on their proposition that no applicable written plan documents exist. However, because I again conclude that there was a written plan document which was applicable to the retirees, Plaintiffs' promissory estoppel claim has no basis in law.

For the foregoing reasons, as well as for the reasons in my February 22, 1994, Report, I again conclude that Defendants are entitled to summary judgment as to the insurance plan claims and therefore Plaintiffs' Objections 3, 4, 5, 6, 35, 36, 37, 38, 39, and 40 should be overruled.

## CONCLUSION

For the foregoing reasons, as well as for the reasons in my February 22, 1994, Report and Recommendations, (Doc. 53), I again recommend that:

1) the Insurance Plan Plaintiffs' Motion for Class Certification (Doc. 35) be DENIED;

2) Defendants' Motion for Summary Judgment as to the Pension Plan Plaintiffs' claims (Doc. 22) be GRANTED; and

---

**2.** Walton's testimony is by way of deposition while Vance's and F. Walther's testimony is by way of affidavit.

**1194**

3) Defendants' Motion for Summary Judgment as to the Insurance Plan Plaintiffs' claims (Doc. 38) be GRANTED.

July 6, 1994.